**UNITED STATES of America,**
**Appellee,**

v.

**Robert CATOGGIO, Roy Ageloff,**
**Defendants–Appellants.**

Nos. 01–1367(L), 01–1481(CON).

United States Court of Appeals,
Second Circuit.

Argued: Jan. 7, 2003.

Decided: April 16, 2003.

**324**

Nancy C. Wear, Coral Gables, FL (Hilliard E. Moldof, on the brief), for Defendant–Appellant.

Paul Schoeman, Assistant United States Attorney, Eastern District of New York (Alan Vinegrad, United States Attorney, Peter A Norling, Assistant United States Attorney, on the brief), for Appellee.

Before: FEINBERG, F.I. PARKER and STRAUB, Circuit Judges.

FEINBERG, Circuit Judge.

Roy Ageloff appeals from an August 2001 order of restitution imposed by the United States District Court for the Eastern District of New York (Dearie, J.). The court ordered restitution under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, in the amount of $80 million following Ageloff's guilty plea to racketeering charges. On appeal Ageloff argues that restitution should not have been ordered under the MVRA because that statute specifically does not apply where the victims of a crime and their losses are unidentifiable or their numbers are too large for restitution to be practical. He further argues that even if the MVRA applies, the district court erred in not following the procedures outlined in that statute. For the reasons stated below, we vacate the restitution order and remand for further proceedings.

## I. Background

In August 2000, Roy Ageloff pled guilty to Count One of a 34–count superseding indictment charging him and 55 co-conspirators with engaging in a pattern of racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1963. Count One accused the defendants of conducting a RICO enterprise to perpetrate fraud against members of the investing public in connection with the purchase and sale of certain stocks. The Presentence Report ("PSR"), prepared in November 2000 by the Probation Office, details the following about the pattern of racketeering activity designed by Ageloff to obtain tens of millions of dollars for himself and other members of the enterprise at the expense of unwary consumers.

From 1991 to 1998, Ageloff and his partner Robert Catoggio controlled four securities brokerage firms: Hanover, Sterling & Co., Ltd., Norfolk Securities Corp., PCM Securities, Limited, L.P., and Capital Planning Associates, Inc. The racketeering activity in each of these four firms followed a similar pattern. Defendants acquired control over large blocks of stock and stock warrants of various small start-up companies, as well as companies that did no business at all (referred to in the indictment as "house stocks"). Defendants often acquired these house stocks cheaply, sometimes by paying kickbacks to the principals of the stock issuers or in other improper ways.

After acquiring the house stocks, defendants used various methods to create artificial market demand for those stocks. For example, the brokerage firms would

pay large undisclosed commissions (as high as 20–30% of the price of the stock) to brokers based on the amount of the particular house stock a broker sold. These large commissions, which were not paid to brokers for selling non-house stock or for buying house stock from consumers, encouraged brokers to aggressively tout the house stocks to the public. Brokers routinely informed customers that a nominal commission or no commission would be charged.

In addition, Ageloff and his co-conspirators used high-pressure sales tactics and misleading statements to persuade customers not to sell house stocks. They would praise the business prospects of the house stock companies, even though many of the companies did little or no business, and would assure their customers that the price of the house stocks would rise rapidly. To maintain the appearance of demand, brokers would often either fail to take and execute customer orders to sell house stocks or execute such a sale only if it could be "crossed" with a purchase of the same stock by another customer.

This scheme worked for a number of years. As the price of the house stock rose, Ageloff and his co-conspirators would sell their shares for substantial profit. However, in 1997, the Federal Bureau of Investigation began to investigate the business practices of all four firms. That investigation led to the indictment of 55 defendants, including Ageloff, for participating in the scheme outlined above.

In August 2000, Ageloff pled guilty to one count of racketeering in violation of RICO. Ageloff's plea agreement included an estimate of the applicable Sentencing Guidelines calculation. By agreeing to the plea, Ageloff stipulated to a sentence enhancement of 18 levels pursuant to U.S.S.G. § 2F1.1(b)(1)(S) for fraud that amounted to losses exceeding $80 million, the highest loss bracket under the applicable 1997 Guidelines Manual. As to restitution, the plea agreement simply noted that restitution was "[a]pplicable, in an amount to be determined by the Court."

At the plea hearing, the district court made clear its intention to impose restitution "to the extent that specific victims can be identified." Regarding the victims, the PSR noted that "[d]ue to the thousands of victims affected by the defendants' conduct, it would be impractical to request Affidavits of Loss from each victim, but it is noted that the Government is in possession of trading records which identify the victims and their respective losses." The PSR also noted that for sentencing guideline purposes, Ageloff was responsible for losses of more than $80 million.

Ageloff's sentencing hearing took place a year later in August 2001. At that time, the court imposed a sentence of 96 months in prison and three years of supervised release. With regard to restitution, however, the government had not yet provided the court with a list of identified victims and their actual losses. The court nonetheless imposed $80 million in restitution as part of Ageloff's sentence.[1] Following the imposition of restitution, Ageloff acknowledged on the record that he had agreed with the government that the required victim information could be provided at a date beyond the 90 days otherwise specified in 18 U.S.C. § 3664(d)(5). Accordingly, the restitution order imposed by the court stated,

> By consent of the parties, the names of the victims to whom restitution is owed and the losses sustained by each individual victim will be set forth in a separate Order of the Court at such time, which

1. Ageloff was held jointly and severally liable for this amount with co-defendant Catoggio.

may exceed 90 days from the date of this Order, as that information can be ascertained by the Court, on notice to the defendant, based on a proposal that shall be submitted by the United States Attorney.

The court also imposed the following payment schedule with regard to restitution: Ageloff was required to pay $500,000 within 30 days of sentencing, another $500,000 within 30 days of his release from prison, and $10,000 per month thereafter as a condition of supervised release. This schedule was subject to modification based on periodic financial disclosure and was without prejudice to the government's ability to collect on the full amount of the judgment.

This appeal from the restitution order followed.

## II. Discussion

Although appellant did not object to the restitution order in the district court, the claims he makes on appeal relate solely to that order. Ordinarily, when a defendant has failed to object to an order in the district court, we review the court's imposition of that order for plain error. See *United States v. Thompson,* 113 F.3d 13, 15 (2d Cir.1997). However, we have made clear that "failure to object to the restitution order at the time of sentencing does not preclude appellate review because an improper order of restitution constitutes an illegal sentence and, therefore, plain error." *United States v. Kinlock,* 174 F.3d 297, 299 (2d Cir.1999).

The restitution order in this case is governed by the MVRA,[2] which makes restitution mandatory for losses suffered by the

victims of certain crimes including crimes such as Ageloff's that are perpetrated by fraud. 18 U.S.C. § 3663A(c)(1)(A)(ii). However, the MVRA applies only when "an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). The MVRA also does not apply when the number of identifiable victims makes restitution impracticable or when determining complex issues of fact related to restitution would complicate or prolong sentencing to an intolerable degree. 18 U.S.C. § 3663A(c)(3).

The MVRA requires the sentencing court to impose restitution in "the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A); *United States v. Harris,* 302 F.3d 72, 75 (2d Cir.2002) ("[T]he district court was required to order restitution and determine the amount thereof without consideration of the economic circumstances of the defendant."). The MVRA further provides that restitution be ordered and enforced according to the procedures outlined in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3663A(d). We have explained those procedures as follows:

> This section requires, among other things, a sentencing court to direct the probation officer to prepare a presentence or other report detailing the losses sustained by each victim, any restitution stipulated by plea agreement, and the economic resources of each defendant.... The statute provides that if the amount of loss cannot be determined at least ten days before sentencing, "the

---

**2.** At a pre-sentence conference in the district court, Ageloff argued that restitution was discretionary because his conduct occurred before, as well as after, the April 24, 1996 effective date of the MVRA. However, in *United*

*States v. Boyd,* 239 F.3d 471, 472 (2d Cir. 2001), we upheld a sentencing court's application of the MVRA to a conspiracy that commenced before April 24, 1996 but continued thereafter.

court shall set a date for the final determination of the victim's losses, *not to exceed 90 days after sentencing.*" A victim may "petition the court for an amended restitution order" if the victim thereafter discovers additional losses and shows good cause for not including those losses in the initial restitutionary request.

*United States v. Stevens,* 211 F.3d 1, 4 (2d Cir.2000) (emphasis added). Section 3664 also requires the district court to determine a schedule for payment of restitution. 18 U.S.C. § 3664(f)(2). In doing so, the court must consider the defendant's financial resources and other assets, his projected earnings, and his financial obligations. *Id.*

On appeal, Ageloff challenges the validity of the restitution portion of his sentence because the district court did not follow the requirements of the MVRA.[3] First, Ageloff contends that the MVRA is not applicable to his case, and therefore restitution was improper, because (1) the government was unable to identify any specific victims who suffered actual losses, (2) the number of victims is too large for restitution to be practicable, and (3) the factual issues involved in determining victims' losses were so complex that the need for restitution was outweighed by the burden on the sentencing process. Second, Ageloff argues that restitution in the amount of $80 million does not represent the amount of actual losses suffered by any identified victims. Third, Ageloff contends that all issues with regard to restitution must be, but were not, resolved within 90 days of sentencing despite his purported waiver of this statutory period. Finally, Ageloff argues that the court erred in setting the payment schedule because it did not consider his financial resources and other assets, his projected earnings, and his financial obligations as required by § 3664(f)(2).

■ At the outset, we recognize that the district court's approach to restitution in this case represents a creative approach to a difficult problem. Ageloff's crime resulted in thousands of victims and large losses. Although those victims and their losses are identifiable, it takes time to unravel the effects of a complex scheme of the type used by Ageloff and his co-conspirators to perpetrate this fraud. The district court apparently set restitution in an amount agreed upon by defendant and probably exceeding any sum defendant will ever pay. Further, the court obviously knew that it would take time for the government to discover the identities of the victims and their actual losses, but believed restitution was an important part of Ageloff's sentence. The court thus obtained Ageloff's consent to extend the time for the government to provide such evidence beyond the 90–day limit in the statute. Although we believe the district court's efforts are understandable, we must agree with defendant that the methods employed were not in accordance with the procedures Congress set forth in the MVRA.

Although we agree with Ageloff's conclusion that the restitution order violated the MVRA, we do not agree with most of his arguments. We do not agree, for example, that the victims of his crime were unidenti-

---

**3.** Ageloff's plea agreement included a general waiver of the right to appeal his conviction and sentence. Ageloff argues that this general waiver did not constitute a waiver of the right to appeal any illegally imposed restitution, and the government has not challenged Ageloff's interpretation. *See United States v.*

*Ready,* 82 F.3d 551 (2d Cir.1996) ("We conclude that the waiver contained in Ready's plea agreement does not, under the circumstances presented, operate as a waiver of Ready's right to appeal his restitution penalty.").

fiable. While the PSR indicated that it would be impractical to request affidavits of loss from each victim, it also noted that the government was "in possession of trading records which identify the victims and their respective losses." Further, at oral argument before us the government indicated that a 1,700–page victim restitution report was submitted to the district court last summer. According to the government, this report detailed $192 million in actual losses to approximately 10,000 victims.[4] Therefore, Ageloff's claim that the victims are unidentifiable is at best a disingenuous effort to avoid a consequence of his criminal behavior.

Furthermore, we find meritless Ageloff's argument that the number of victims is too large for restitution to be practicable and that the issues involved in determining restitution are so complex that the need for restitution is outweighed by the burden on the sentencing process. See 18 U.S.C. § 3663A(c)(3). As the government correctly points out, this provision of the MVRA was intended to permit a sentencing court to forego restitution if the court determines that imposing and administering restitution would be unduly burdensome. Here, the record indicates that the district court, although aware of the difficulties involved in ordering restitution in this case, did not consider the process too burdensome. Rather, it appears that the district court considered restitution an essential part of Ageloff's sentence. We therefore do not think the district court committed plain error in proceeding with restitution in this admittedly complex case.

We also reject Ageloff's argument that the district court failed to consider the required factors outlined in § 3664(f)(2) before setting the restitution schedule. In *Kinlock* we held that a court need not make detailed factual findings on each of the required factors so long as the court makes some "affirmative act or statement" to demonstrate that it considered those factors. 174 F.3d at 300. After reviewing the record, we find that the district court adequately considered the required factors. The restitution order itself states unequivocally, "This Order is entered after the Court has fully considered the factors set forth in 18 U.S.C. §§ 3663(a)(1)(B) and 3664(f)(2)." Moreover, a substantial portion of the sentencing transcript contains a discussion of Ageloff's resources, potential earnings and financial obligations. Therefore, we find no error in the district court's determination of Ageloff's payment schedule.

In our view, however, the district court did err in ordering restitution to unidentified, as opposed to unidentifiable, victims and in an amount ($80 million) that may not represent the actual losses to those victims. The MVRA is clear that restitution can only be imposed to the extent that the victims of a crime are actually identified, 18 U.S.C. § 3663A(c)(1)(B). Identification of victims is a statutory prerequisite to the application of the MVRA. Additionally, identifying victims prior to imposing restitution ensures that those victims receive the pro-rata share of the restitution funds to which they are entitled. Therefore, although we believe the victims of Ageloff's fraud are identifiable, the court erred in not identifying them before ordering restitution. *See, e.g., United States v. Grimes,* 173 F.3d 634, 640 (7th Cir.1999) (vacating restitution order issued before identification of victims and noting that "[t]he 90–day period for deferral of the order and the provision for amendment

---

4. According to the government, Ageloff is currently challenging the victim restitution report pro se in the district court.

later are [Congress'] chosen method of dealing with the problem of unascertained victims").

As noted above, the MVRA also requires courts to order restitution in the full amount of the victims' losses. 18 U.S.C. § 3664(f)(1)(A). However, neither the parties nor the district court below believed the $80 million figure was an accurate statement of the victims' losses in this case. Ageloff argues that the losses were significantly less; as indicated above, the government now contends before the district court that the losses exceeded $190 million; and the district court made no indication that the $80 million figure was an estimate of actual loss. *Cf. United States v. Futrell*, 209 F.3d 1286, 1292 (11th Cir.2000) (holding that restitution could be based on a reasonable estimate of losses when it would be impossible to determine the precise amount). Rather, it appears that the district court simply used the figure admitted in Ageloff's plea agreement for the purpose of setting the appropriate upward enhancement to the length of his incarceration. Not only might this number not represent actual losses for restitution purposes, *United States v. Carboni*, 204 F.3d 39, 47 (2d Cir.2000) ("Although the district court did not err in calculating Fleet's loss for purposes of setting the offense level, we must separately analyze loss with respect to the restitution order because a court's power to order restitution is limited to actual loss."), but by explicitly agreeing to the highest enhancement, Ageloff admitted to causing losses *exceeding* $80 million.

■ Nevertheless, the government now urges that the district court's approach was sensible given that Ageloff will never be able to pay even a fraction of the $80 million imposed in the restitution order. However, the MVRA makes clear that the defendant's ability to pay should not be considered in determining the amount of restitution. Congress evidently wanted to ensure that victims be fully compensated for a defendant's past crimes if that defendant "unexpectedly inherit[s] money, win[s] the lottery, or otherwise strike[s] it rich." *Grimes*, 173 F.3d at 639; *see also United States v. Vandeberg*, 201 F.3d 805, 812 n. 3 (6th Cir.2000) ("By disregarding the defendant's financial condition for restitution purposes, the MVRA permits full payment of restitution in the possible, but unlikely, event that a defendant might win a lottery or otherwise strike it rich after sentencing."). Therefore, we hold that even where a defendant's complex fraud scheme results in many victims whose identities and losses are difficult to ascertain, the district court should identify the victims and their actual losses prior to imposing restitution under the MVRA.[5]

Given our holding above, the question becomes whether we can remand the case to the district court to identify the victims and their losses. At oral argument, counsel for Ageloff argued that because an order of restitution under the MVRA must be entered within 90 days of sentencing, we have no choice but to vacate the restitution order without remanding for further proceedings. We do not agree. In *Stevens* we held that the district court was obligated to order restitution within the 90–day period prescribed by the statute. 211 F.3d at 4. However, we also held in *Stevens* that failure to do so can be considered harmless error and a defendant is not entitled to enforce that 90–day limit with-

---

**5.** We express no opinion as to whether the district court may ever extend the 90–day deadline of § 3664(d)(5), either directly or indirectly through "creative" methods, when faced with a class of identifiable victims so numerous that 90 days is an impossible deadline by which to complete the identification process.

out showing "that the delay caused prejudice to his or her defense." *Id.* at 5 (finding harmless error and no prejudice where the defendant caused delay).

■ Ageloff surely was not prejudiced by a delay he consented to with the advice of experienced counsel. In fact, the only prejudice Ageloff argues before this court is that the government's inability to prove the identities of the victims and their losses within the 90–day period evidences the government's inability ever to provide such proof. Ageloff argues that "the 90–day window is mandatory, in part, because it forms a benchmark separating the identified and identifiable victims with discrete and provable losses from those who cannot be identified and whose supposed losses are incapable of proof." We have already rejected Ageloff's contention that the victims and their losses in this case are all unidentifiable. We also note that the intent behind the 90–day period was not to protect defendants, but rather to protect victims from the willful dissipation of a defendant's assets. *Id.* at 5 n. 2 ("In our view, the 90–day limit on the entry of a restitution order is more consistent with Congress's concerns about preventing the dissipation of a defendant's assets, than with protecting a defendant from a drawn-out sentencing process."). Ageloff's attempt to invoke this provision in order to avoid paying restitution to the victims of his crime is unavailing.

We therefore vacate the restitution portion of Ageloff's sentence and remand the case for resentencing on restitution. The government has indicated that proceedings to determine the victims and their actual losses are currently under way in the district court. We do not mean to interrupt those proceedings. The district court should simply incorporate the findings from those proceedings into a new restitution order. In view of the time that has elapsed since Ageloff's initial sentencing, we direct the district court to schedule a sentencing hearing on restitution forthwith.