10-2113-cr
USA v. Schwamborn

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of March, two thousand twelve.

Present:
>        ROBERT A. KATZMANN,
>        RICHARD C. WESLEY,
>                *Circuit Judges*,
>        STEFAN R. UNDERHILL,
>                *District Judge*.[*]

_____

UNITED STATES OF AMERICA,

>        *Appellee*,

>               v.                                        No.  10-2113-cr

FRANK SCHWAMBORN,

>        *Defendant-Appellant*,

_____

For Defendant-Appellant:          LAURIE S. HERSHEY, Manhasset, N.Y.

---

[*] The Honorable Stefan R. Underhill, of the United States District Court for the District of Connecticut, sitting by designation.

For Appellee:                    CHARLES P. KELLY (Emily Berger, *on the brief*), Assistant
                                 United States Attorneys, *for* Loretta E. Lynch, United States
                                 Attorney for the Eastern District of New York, Brooklyn, N.Y.


        Appeal from the United States District Court for the Eastern District of New York
(Feuerstein, *J.*).

        **ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and

**DECREED** that the district court's restitution order be and hereby is **VACATED.**  The case is

**REMANDED** for proceedings consistent with this order.

        Defendant-Appellant Frank Schwamborn ("Schwamborn") appeals from an order of

restitution issued by the United States District Court for the Eastern District of New York

(Feuerstein, *J.*).  In March of 2009, pursuant to a plea agreement, Schwamborn pled guilty to one

count of securities fraud stemming from his involvement in a scheme to manipulate the stock

price of a publicly-traded company he controlled called World Cyberlinks.  On April 26, 2010,

the district court sentenced Schwamborn principally to 121 months' imprisonment and ordered

him to pay a forfeiture in the amount of $2,100,000.  The district court's judgment specified that

restitution was "[t]o be determined."  App. 119.  On January 28, 2011, following various

proceedings regarding the restitution award, the district court entered an order amending the

April 26, 2010 judgment and requiring Schwamborn to pay restitution in the amount of

$413,450.08.  On appeal, Schwamborn argues that the restitution order should be vacated

because it was "based on insufficient proof of loss causation and loss estimates, lacked any

findings of fact relative to an appropriate payment schedule, and was the product of unduly

prolonged sentencing proceedings."  Pl.'s Br. 3.  We assume the parties' familiarity with the

facts and procedural history of this case.

2

The Mandatory Victims Restitution Act of 1996 ("MVRA"), codified largely at 18 U.S.C. §§ 3663A and 3664, "requires sentencing courts to order restitution for certain crimes, such as 'an offense against property under this title . . . including any offense committed by fraud or deceit,' and where an identifiable victim has suffered pecuniary loss." *United States v. Marino*, 654 F.3d 310, 316 (2d Cir. 2011) (quoting 18 U.S.C. § 3663A(a)(1); § 3663A(c)(1)). "The goal of restitution, in the criminal context, is to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." *United States v. Battista*, 575 F.3d 226, 229 (2d Cir. 2009) (internal quotation marks omitted). The statute defines "victim" broadly as any "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). Section 3664, which specifies the procedures to be followed in ordering restitution, places responsibility for identifying the victims of the defendant's offense on the government. *Id.* § 3664(e); *United States v. Reifler*, 446 F.3d 65, 121 (2d Cir. 2006). The sentencing court is required to "order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order," including, *inter alia*, "to the extent practicable, a complete accounting of the losses to each victim." 18 U.S.C. § 3664(a). The probation officer, in turn, is to obtain victim information from the government's attorney, who is required to "consult[], to the extent practicable, with all identified victims" and "promptly provide the probation officer with a listing of the amounts subject to restitution." *Id.* § 3664(d)(1). If victim losses cannot be ascertained by ten days before sentencing, "the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

3

*Id.* § 3664(d)(5). The defendant bears the burden of demonstrating his financial resources and the financial needs of his dependents, *id.* § 3664(e), and Section 3664(f) provides that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A). We review a district court's order of restitution under the MVRA for abuse of discretion. *Marino*, 654 F.3d at 316.

We turn first to Schwamborn's argument that the restitution order should be vacated because it was the product of unduly prolonged sentencing proceedings. This contention is unavailing. While the MVRA provides that "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing," 18 U.S.C. § 3664(d)(5), the Supreme Court has explained that "the statute seeks primarily to assure that victims of a crime receive full restitution," and not "to provide defendants with certainty as to the amount of their liability." *Dolan v. United States*, 130 S. Ct. 2533, 2539-40 (2010). Accordingly, "a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution . . . where . . . the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." *Id.* at 2537; *see also United States v. Pickett*, 612 F.3d 147, 149 (2d Cir. 2010) (per curiam) (relying on *Dolan* to conclude that the district court acted within its authority in ordering restitution ninety-eight days after the sentencing hearing). In this case, the district court's April 26, 2010 judgment specified that restitution was "[t]o be determined," thereby making clear that it would order restitution and leaving open only the amount. App. 119. Additionally, Schwamborn has failed to show that he was prejudiced by any delay. *See United States v. Catoggio*, 326 F.3d 323, 330 (2d Cir. 2003).

4

Thus, the length of time between Schwamborn's sentencing and the entry of the district court's restitution order does not alone warrant reversal.

Schwamborn's remaining arguments, however, are more compelling, particularly those concerning the quantification of loss in this case. On July 23, 2010, the government submitted a letter to the district court requesting $1,278,350.11 in restitution. Finding the government's evidence supporting this request to be inadequate, the court requested affidavits of loss from the victims. The government thereafter submitted affidavits from thirty victims, and, on the basis of those affidavits, reduced its original restitution request to $415,450.08. Twenty of the affidavits submitted by the government lacked any information regarding the dates on which the securities were purchased and sold, and at what prices. Those reporting the five largest losses, in the amounts of $118,000, $53,000, $52,555, $44,000, and $38,541.69, included no dates of purchase or sale. One affidavit claiming a $2,000 loss indicated that the victim could search for documentation verifying the loss, and, as a result, the court found the affidavit was based on a rough estimate and excluded it from the calculation of loss. The district court accepted the remaining affidavits, however, and ordered restitution in the amount of $413,450.08. On Schwamborn's request, the court ordered that he not be required to pay any restitution until 30 days after his release from prison.

We review an order of restitution deferentially because determining the appropriate amount of restitution "requires a delicate balancing of diverse, sometimes incomparable factors." *United States v. Ismail*, 219 F.3d 76, 78 (2d Cir. 2000) (quoting *United States v. Atkinson*, 788 F.2d 900, 902 (2d Cir. 1986)). Nonetheless, the MVRA requires the district court to order restitution "in the *full amount* of each victim's losses." 18 U.S.C. § 3664(f)(1)(A) (emphasis

5

added).  Accordingly, we held in *United States v. Reifler* that the district court's acceptance of the government's rough estimate of the restitution amount "plainly contravene[d] the MVRA's requirement that any restitution order compensate the victims in 'full.'" 446 F.3d at 133; *see also Catoggio*, 326 F.3d at 329 (noting that the MVRA requires courts to order restitution in the full amount of the victims' losses, and disapproving of the district court's failure to determine precisely the "actual losses for restitution purposes").

In this case, the government's decision to abandon its original request for $1,278,350.11 and to instead request only $413,450.08 suggests that this latter amount does not represent the "actual loss" to the victims as required by the statute.  Moreover, it is impossible to determine from the affidavits submitted by the government whether the losses alleged represent anything more than rough estimates, or whether the individuals claiming to be victims of the scheme actually received a return on their investment but based their estimates of loss on the idea that they would have received a greater return by investing in other stock, the value of which was not based on fraud.  The government's proof of the restitution amount is therefore insufficient under *Reifler*, and we must vacate the restitution award for this reason alone.

On remand, we direct the district court to consider in the first instance whether "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."  18 U.S.C. § 3663A(c)(3)(B); *see also United States v. Amato*, 540 F.3d 159, 162 (2d Cir. 2008).  Although we suggested in *Reifler* that issues concerning loss causation in the context of a "pump and dump" securities fraud scheme, like the one at issue here, may indeed prove unduly complicated,

6

446 F.3d at 135, we observe that there are important distinctions between this case and *Reifler*. First, in *Reifler*, the government never specifically alleged that the stock had no value aside from the defendants' wrongful conduct. Indeed, one of the causation issues in *Reifler* was that the government included in its loss exhibits the accounts of individuals who purchased stock before the conspiracy began. *See id.* at 130. In this case, on the other hand, the government alleges that World Cyberlinks stock had no inherent value independent of Schwamborn's fraud. Gov't Br. 6. Second, the government here, unlike in *Reifler*, specifically alleges that Schwamborn's conduct had an inflationary effect on the market price of World Cyberlinks stock. Gov't Br. 5. Thus, although there are multiple victims whose trading histories may reflect losses as well as partially offsetting gains, we discern no complex causation or loss quantification issues that would prevent the district court from fashioning a revised order of restitution.

On remand, we further instruct the district court to consider any argument Schwamborn may wish to raise with respect to the amount of restitution and an appropriate payment schedule, and, "[i]n view of the time that has elapsed since [Schwamborn's] initial sentencing, . . . direct the district court to schedule a sentencing hearing on restitution forthwith." *Catoggio*, 326 F.3d at 330.

We have considered the parties' remaining arguments and find them to be without merit. For the reasons stated herein, the restitution order of the district court is **VACATED** and the case **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK