UNITED STATES of America,

v.

**Marie BARAN, Defendant.**

**11 CR 1091 (VM)**

United States District Court, S.D. New York.

Signed June 29, 2016

Andrew Daniel Goldstein, Daniel Ben Tehrani, E. Danya Perry, Justin S. Weddle, Nicole Ware Friedlander, United States Attorney Office, New York, NY, for United States of America.

Sean Michael Maher, The Law Offices of Sean M. Maher, PPLC, Thomas Edward Engel, McKool Smith, Joshua Lewis Dratel, Law Offices of Joshua L. Dratel, P.C., Lindsay Anne Lewis, Law Offices of Joshua Dratel, P.C, Henry Edward Mazurek, Clayman & Rosenberg, LLP, Joey Jackson, Koehler & Isaacs, LLP, Annie Joy D'Elia, Law Offices of Lawrence S. Goldman, Paul Barry Bergman, Paul B. Bergman, P.C., Richard Franklin Albert, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., Glenn Andrew Garber, Glenn A. Garber, P.C., Susan J. Walsh, Vladeck, Waldman, Elias & Engelhard, P.C., Mathew J. Mari, Mathew J. Mari, Attorney at Law, Chad Derek Seigel, Tacopina & Seigel, P.C., Joseph Tacopina, Joseph Tacopina, P.C., New York, NY, John D. Cline, Law Office of John D. Cline, San Francisco, CA, Thomas Anthony Durkin, Durkin & Roberts, Chicago, IL, Leonard Ira Ressler, Leonard I. Ressler, Esq., Charles Seth Kelton, Kelton & Teichner, Robert Douglas Didio, Kew Gardens, NY, Peter Joseph Tomao, Law Office of Peter J. Tomao, Stephen P. Scaring, Stephen P. Scaring, P.C., John Frederick Carman, Law Office of John F. Carman, Alan Jonathan Schwartz, Law Offices of Alan J. Schwartz, PC, Garden City, NY, Joseph W. Ryan, Jr., Melville, NY, Joseph A. Gentile, Frankie & Gentile, P.C., Robert G.

Del Grosso, Robert G. Del Grosso, Attorney at Law, Edward Philip Jenks, Law Office of Edward P. Jenks, Mineola, NY, Joseph F. Kilada, Bell & Kilada PLLC, Carle Place, NY, William Douglas Wexler, William D. Wexler, Esq, North Babylon, NY, Anthony M. Lapinta, Reynolds, Caronia, Gianelli & La Pinta, LLP, Happauge, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge

Petitioner Marie Baran ("Baran") filed this motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure ("Rule 33"), 28 U.S.C. Section 2255 ("Section 2255"), and/or 28 U.S.C. Section 1651 ("Writ of Error"), based upon alleged newly-discovered evidence in her case. ("Motion," Dkt. No. 866.) In the alternative, Baran seeks a resentencing based on a "factually accurate updated Presentence Report." (Dkt. No. 867.) Baran is currently serving a sentence of sixty (60) months imprisonment after a jury found her guilty of four counts of conspiracy, two counts of health care fraud, two counts of mail fraud, and two counts of wire fraud. For the reasons discussed below, Baran's motion for a new trial is DENIED and her motion for resentencing is DENIED in part. The Court directs additional briefing by the parties as to the actual loss sustained by the United States Railroad Retirement Board ("RRB") as a result of Baran's fraudulent actions in light of the alleged newly-discovered evidence.

## I. BACKGROUND [1]

Baran, a former employee of the United States Railroad Retirement Board ("RRB"), in concert with Peter Lesniewski ("Lesniewski"), an orthopedic physician, and Joseph Rutigliano ("Rutigliano"), a former Long Island Rail Road ("LIRR") conductor and union local president, participated in a longstanding scheme in which retiring LIRR employees conspired to fraudulently obtain federal disability benefits from the RRB.

By superseding indictment ("Indictment") filed on May 6, 2013 (Dkt. No. 383), the Government charged Baran with the following criminal offenses: (a) conspiracy to commit mail fraud, wire fraud, and health care fraud, in violation of 18 U.S.C. Section 1349 ("Count One"); (b) conspiracy to commit mail fraud, wire fraud, and health care fraud, in violation of 18 U.S.C. Section 1349 ("Count Two"); (c) conspiracy to defraud the RRB in violation of 18 U.S.C. Section 371 ("Count Three"); and (d) conspiracy to defraud the RRB in violation of 18 U.S.C. Section 371 ("Count Four"). Counts 10, 11, and 12 charged Baran with health care fraud in violation of 18 U.S.C. Sections 1347 and 2. Counts 13, 16, and 18 charged Baran with mail fraud in violation of 18 U.S.C. Sections 1341 and 2. Counts 28, 31, and 32 charged Baran with wire fraud in violation of 18 U.S.C. Sections 1343 and 2.[2]

---

1. The Court derives the factual and procedural summary below from the following submissions: (1) Baran's Motion to Vacate, Set Aside, or Correct Her Sentence under Section 2255, dated July 15, 2015 ("Section 2255 Motion," Dkt. No. 800); (2) Government's Brief in Opposition to Baran's Section 2255 Motion, dated Dec. 7, 2015 ("Government Opposition," Dkt. No. 833); (3) Baran's Motion for a New Trial under Rule 33, Section 2255, and/or Writ of Error or in the Alternative for Resentencing, dated June 3, 2016 (Dkt. Nos. 866); and (4) Baran's Brief in Support of her Motion dated June 3, 2016 (Dkt. No. 867). Except where specifically referenced, no further citation to these sources will be made.

2. The Court notes that Baran was not indicted on the remaining counts.

Jury trial against Rutigliano, Lesniewski, and Baran commenced on July 15, 2013. (See Dkt. Minute Entry for July 15, 2013.) During trial, twelve (12) counts were dismissed on the Government's motion. On August 6, 2013, the jury found all three defendants guilty on all remaining counts. (See Dkt. Minute Entry for Aug. 6, 2013.)

Baran filed a Section 2255 Motion, on March 16, 2014, alleging ineffective assistance of counsel. (Dkt. No. 671.) The Court denied Baran's motion because she had not yet been sentenced. (Dkt. No. 675.)

The Court sentenced Baran on April 4, 2014 to concurrent terms of sixty (60) months imprisonment on Counts One, Two, Three, and Four (conspiracy), Counts 10 and 11 (health care fraud), Counts 13 and 18 (mail fraud), and Counts 28 and 32 (wire fraud) followed by three (3) years of supervised release. (See Dkt. Minute Entry for Apr. 4, 2014; Dkt. No. 704.)

Baran subsequently filed a notice of appeal challenging her conviction based on ineffective assistance of counsel, lack of venue, and a procedurally and substantively unreasonable sentence. (Dkt. No. 717.) The United States Court of Appeals for the Second Circuit denied Baran's appeal but declined to decide Baran's ineffective assistance of counsel claims on the ground that resolution of those claims was more appropriate on a motion brought under 28 U.S.C. Section 2255. See United States v. Rutigliano, 614 Fed.Appx. 542, 548 (2d Cir. 2015). Baran then filed a motion to vacate, set aside, or otherwise correct her conviction and sentence pursuant to Section 2255 (Dkt. No. 800), which was subsequently denied, in its entirety, by this Court on January 5, 2016. (Dkt. No. 837.)

On June 3, 2016, Baran filed the instant Motion. Baran alleges that the post-trial findings of the RRB clearly show that a vast majority of disability pensions awarded to LIRR employees were not in fact fraudulent. Baran argues that had the newly-discovered evidence been available at trial the defense would have persuaded the jury that no fraud had been committed and that no loss had been sustained by the RRB, resulting in a "reasonable probability that Baran would have been acquitted." (Dkt. No. 867.)

Baran attaches to her Motion a letter dated June 5, 2015 from the RRB stating that they issued Order 13-55, invalidating all applications that included medical evidence supplied by Lesniewski and permitting those applicants to refile. (Dkt. No. 866, Ex. A.) Additionally, the letter states that the RRB issued Order 13-33 (together with Order 13-55, the "Board Orders"), invalidating all applications that included evidence supplied by Dr. Peter Ajemian ("Ajemian") and permitting those applicants to refile. (Id.) The data figures attached to the RRB's letter show that most of the annuitants whose benefits were terminated by the Board Orders reapplied, and a vast majority of those annuitants were approved to receive disability benefits. Specifically, Baran argues that the RRB evaluated 530 reapplications, found that 498 of the pensions had been properly granted, and subsequently reinstated those pensions retroactive to the RRB's termination date ("Post-Board Order Approvals"). In light of these findings, Baran seeks a new trial.

In the alternative, Baran argues that the newly-discovered evidence shows that the RRB suffered little or no loss, and accordingly, the Court should resentence Baran using the correct loss calculation.

## II. DISCUSSION

### A. MOTION FOR A NEW TRIAL PURSUANT TO RULE 33

#### 1. Legal Standard

■ Pursuant to Rule 33, a court, on motion of a defendant, may grant a new

trial to that defendant in the interests of justice. Fed. R. Crim. P. 33. Rule 33 confers "broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir.1992). However, "that discretion should be exercised sparingly." Id. at 1414. The test is whether "it would be a manifest injustice to let the guilty verdict stand." Id. (internal citation omitted). There "must be a real concern that an innocent person may have been convicted." Id. Motions for a new trial are disfavored in the Second Circuit. United States v. Gambino, 59 F.3d 353, 364 (2d Cir.1995).

### 2. Application

■ Upon review of Baran's submission and the trial record in this case, the Court finds that Baran has failed to meet her burden with respect to Rule 33. In this case, the Government presented sufficient evidence to sustain the guilty verdict delivered by the jury at trial, regardless of the alleged newly-discovered evidence. The Government presented testimony and physical evidence at trial establishing that Baran engaged in a longstanding and widespread scheme to defraud the RRB.

The Court here summarizes only some of the overwhelming evidence of Baran's guilt presented by the Government at trial.[3] The Government presented evidence at trial that Baran intentionally lied in the disability applications she submitted, including the testimony of Baran's co-conspirators who unequivocally stated that their applications were riddled with false information and that Baran was the author of those misrepresentations. The Government also presented evidence that Baran used cookie-cutter applications listing identical physical impairments and nearly identical narratives of various applicants' everyday lives. In addition, the Government proved at trial that Baran had nearly 200 clients—all of whom were, co-conspirators and some of whom were indicted and testified.

The Court is persuaded that the Government presented sufficient evidence at trial establishing beyond a reasonable doubt that Baran participated in a scheme to defraud the RRB. As such, the Court finds that Baran has not demonstrated that it would be a manifest injustice to let the jury verdict stand. Accordingly, Baran's Motion for a new trial pursuant to Rule 33 is DENIED.[4]

---

**3.** The Court derives the factual summary below from the trial record. (Dkt. Nos. 493-521.) Except where specifically referenced, no further citations to the trial record will be made.

**4.** Baran points to testimony given at trial by RRB auditor Natasha Marx, who "presented evidence that the application which nearly all of Baran's clients filed with the RRB claimed that almost all activities of daily living were 'hard' or they could do them 'not at all.'" (Dkt. No. 867.) Baran argues that this testimony ignores the fact that the "only other choice was 'not-at-all.'" (Id.) In addition, Baran points to Regina Walsh, the principal witness against Baran, who testified that "those descriptions bore no resemblance to [her] actual [life] or physical conditions." (Id.) Baran contends that her own testimony

at trial indicates that "she filled out [application] forms in good faith based on the information provided by [Drs. Lesniewski and Ajemian ("Doctors")] and her clients." (Id.) Additionally, Baran argues that no evidence was presented at trial that she had any contact with the Doctors regarding these applications, and further, that some patients, such as Walsh, "had obtained medical treatment from these [D]octors years before engaging Ms. Baran's services." (Id.) Baran's arguments in her Motion do not pertain to the alleged newly-discovered evidence. Rather, these contentions essentially challenge some aspects of the evidence against her, the overall sufficiency of which the jury found in favor of conviction and the Second Circuit

## B. RESENTENCING PURSUANT TO 28 U.S.C. SECTION 2255[5]

### 1. Legal Standard

A person in federal custody may move to vacate, set aside, or correct his sentence if it was imposed in violation of "the Constitution or laws of the United States," "the court was without jurisdiction to impose such sentence," or "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. Section 2255(a).

 "[N]ew evidence in a Section 2255 proceeding ... is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner." Giacalone v. United States, 739 F.2d 40, 43 (2d Cir.1984) (internal quotation marks and citations omitted.) The petitioner bears the burden of convincing the court that the newly-discovered evidence "would have resulted in an acquittal." Brown v. United States, No. 05 CR 857, 2011 WL 3273202, at *6 (S.D.N.Y. Aug. 1, 2011). The "petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citations omitted).

### 2. Application

Baran argues that the loss calculated by the Government, and adopted by the Court at sentencing, assumed that every one of the LIRR patients who received disability payments did so through an act of fraud. The Post-Board Order Approvals, Baran argues, show that an overwhelming percentage of these patients were in fact occupationally disabled, thereby rendering the Government's loss calculation materially false. Baran argues that because the basis for her sentence has been altered by the alleged newly-discovered evidence, the Court should resentence her as to her term of imprisonment as well as restitution.

The Court now turns to the question of whether Baran should be resentenced in light of the alleged new evidence as it applies to Baran's term of imprisonment and restitution.

### a. Imprisonment

The United States Sentencing Commission defines loss as the "value of the money, property, or services unlawfully taken from the victim." U.S.S.G. Section 2F1.1, cmt. n.8. The Sentencing Guidelines in U.S.S.G. Section 2F1.1(b)(1) outline step increases from the assigned base offense level depending on the dollar loss at issue in the particular fraud offense. See United States v. Canova, 412 F.3d 331, 351–52 (2d Cir.2005). However, in applying the Sentencing Guidelines, "loss need not be determined with precision," and a sentencing court "need only make a reasonable estimate of the loss, given the available information." U.S.S.G. Section 2F1.1, cmt. n.9; see United States v. Carboni, 204 F.3d 39, 46 (2d Cir.2000) (quoting United States v. Jacobs, 117 F.3d 82, 95 (2d Cir.1997)). Additionally, the Sentencing Commission instructs that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is

---

affirmed on appeal. As such the Court declines to address these arguments.

**5.** Baran also argues for resentencing pursuant to the Writ of Error. Having determined that Baran's claims are more appropriately analyzed pursuant to Section 2255, the Court declines to analyze them pursuant to the Writ of Error.

greater than the actual loss." U.S.S.G. Section 2F1.1, cmt. n.8.

Under the relevant Sentencing Guidelines, defendants are held accountable for the greater of their actual or intended loss. U.S.S.G. Section 2F1.1(b)(1). Generally, intended loss must "include both the amount the victim actually lost and any additional amount that the perpetrator intended the victim to lose." Carboni, 204 F.3d at 47.

In Canova, the Second Circuit found that the district court erred because it did not consider the intended loss of the fraudulent scheme when imposing enhancements to the defendant's base offense level. 412 F.3d at 354. The court reasoned that "the record supports an intended loss ... [,] and such a loss should have been factored into the Sentencing Guidelines considered by the district court in imposing [a] sentence" of imprisonment. Id. at 355. In a subsequent appeal after the defendant's resentencing, the Second Circuit noted that district judges can properly rely on intended loss when determining offense level enhancements for a defendant, "rather than make the more difficult determination of actual loss." United States v. Canova, 485 F.3d 674, 678 (2d Cir.2007).

In Carboni, the Second Circuit held that the district court properly sentenced the defendant to fifteen months imprisonment based on intended loss because "one is presumed to intend the natural and 'probable' consequences of one's acts." 204 F.3d at 47 (quoting Jacobs, 117 F.3d at 95). Thus, even if the full extent of actual loss sustained during the course of fraudulent activities has not yet been realized, if the intended amount is greater, the intended loss must be considered when applying offense level enhancements.

■ Baran was deemed responsible for an actual loss of $31,368,931 with an intended loss of $77,481,779. (See Dkt. Minute Entry for Apr. 4, 2014.) Baran was assigned a Criminal History Category of I. (Id.) Based on Baran's offense level of 31, her Sentencing Guidelines' range of imprisonment was 108 to 135 months. (Id.) The Court deemed 60 months followed by three (3) years of supervised released to be reasonable and appropriate. (Id.; Dkt. No. 704.)

Baran argues that decreasing the amount of actual loss to nearly zero would counsel in favor of reducing the 24 level enhancements that were added based on the loss amounts calculated at the time of sentencing. A reduction by 24 levels would amount to a revised offense level of seven, which would result in a Sentencing Guidelines' range of zero to six months imprisonment under Criminal History Category I.

At the time of sentencing, the Court considered actual loss sustained during the course of the fraud as well as the amount of loss intended by Baran. Actual loss was calculated as the amount paid by the RRB to fraudulently approved disability annuitants as of approximately the date of Baran's sentencing. Intended loss was calculated as the total amount that approved annuitants would have fraudulently obtained until the latest date on which the RRB could continue paying such benefits.

The Court finds that a reduction of the actual loss figure does not affect the offense level calculated at the time of sentencing because the Court used intended loss to determine Baran's offense level enhancements. Accordingly, Baran's term of imprisonment was correctly calculated, and Baran's motion for resentencing as to her term of imprisonment is DENIED.

b. Restitution

■ Loss with respect to restitution must be separately analyzed. See Carboni, 204 F.3d at 47. Generally, a court's power to order restitution is "limited to actual

loss." <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>United States v. Germosen</u>, 139 F.3d 120, 130 (2d Cir.1998) ("Accordingly, because [the district court judge's] amount-of-loss calculation for [the defendant's] offense level was supported by the evidence and was based on actual losses to the victims, [the defendant's] challenge to the loss calculation for restitution award must fail."). Even when actual loss is exceptionally difficult to ascertain, a district court must identify "actual losses prior to imposing restitution." <u>United States v. Catoggio</u>, 326 F.3d 323, 329 (2d Cir.2003).

Based on the loss figures mentioned above, the Court sentenced Baran to pay restitution in the amount of $31,368,931. (Dkt. No. 704.) The restitution order for Baran mirrors her calculated actual loss amount.

The Court is persuaded that a reduction of the actual loss amount may affect the restitution order for Baran. Therefore, the parties are ordered to provide the Court with additional briefing on the sole question of whether the RRB's Post-Board Order Approvals alter the amount of actual loss suffered by the RRB as a result of Baran's fraudulent actions, and if so, the extent of the RRB's actual loss in light of this development.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Marie Baran ("Baran") for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure ("Rule 33"), 28 U.S.C. Section 2255 ("Section 2255"), and/or 28 U.S.C. Section 1651 ("Writ of Error") ("Motion," Dkt. No. 866) is **DENIED**; and it is further

**ORDERED** that the motion of defendant Baran (Dkt. No. 866) for resentencing

her term of imprisonment pursuant to Section 2255 and/or the Writ of Error is **DENIED**; and it is further

**ORDERED** that within thirty (30) days of the date of this Order, counsel for the parties submit additional briefing on the issue presented by defendant Baran regarding the question of whether the amount of actual loss suffered by the United States Railroad Retirement Board ("RRB") and thus the restitution Baran was sentenced to pay, is altered by the alleged newly-discovered evidence in the form of the RRB's Post-Board Order Approvals. Upon submission of such memoranda, the Court will consider whether additional proceedings may be necessary. **SO ORDERED.**