**13-2543-cr(L)**
*United States v. Bengis*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2014

ARGUED: OCTOBER 24, 2014
DECIDED: APRIL 16, 2015

Nos. 13-2543-cr(L), 13-4268-cr(CON)

UNITED STATES OF AMERICA,
*Appellee,*

*v.*


ARNOLD MAURICE BENGIS, JEFFREY NOLL, DAVID BENGIS,
*Defendants-Appellants,*
GRANT BERMAN, SHAUN LEVY,
*Defendants.*[*]

————

Appeal from the United States District Court for the Southern
District of New York.
No. 1:03-cr-00308 – Lewis A. Kaplan, *Judge.*

————

Before: WALKER, CABRANES, and CARNEY, *Circuit Judges.*

---

[*] The Clerk of Court is directed to amend the official caption to
conform with the above.

_____

Arnold Bengis and Jeffrey Noll pleaded guilty to conspiracy to commit smuggling and violate the Lacey Act, which prohibits trade in illegally taken fish and wildlife, and to substantive violations of the Lacey Act. David Bengis pleaded guilty to conspiracy to violate the Lacey Act. The district court (Lewis A. Kaplan, *J.*) entered a restitution order requiring Arnold Bengis, Noll, and David Bengis (jointly, "defendants") to pay $22,446,720 to South Africa. Defendants appeal the restitution order on a variety of grounds. In this opinion, we address only: (1) the government's contention that the appeal should be dismissed; (2) the defendants' contention that the restitution order violated their Sixth Amendment rights; and (3) David Bengis's contention that he should not be held liable for the entire restitution amount. We affirm the district court's judgment except as to the extent of David Bengis's liability and we remand the restitution order entered against David Bengis for further proceedings. Defendants' remaining arguments are resolved in a summary order filed simultaneously with this opinion.

_____

MARK A. BERUBE, Mishcon de Reya New York LLP, New York, NY, *for Defendants-Appellants*.

ERIC M. CREIZMAN, Creizman PLLC, New York, NY, *for Defendant-Appellant David Bengis*.

JARED LENOW (Brent S. Wible, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

———

JOHN M. WALKER, JR., *Circuit Judge*:

Arnold Bengis and Jeffrey Noll pleaded guilty to conspiracy to commit smuggling and violate the Lacey Act, which prohibits trade in illegally taken fish and wildlife, and to substantive violations of the Lacey Act. David Bengis pleaded guilty to conspiracy to violate the Lacey Act. The district court (Lewis A. Kaplan, *J.*) entered a restitution order requiring Arnold Bengis, Noll, and David Bengis (jointly, "defendants") to pay $22,446,720 to South Africa. Defendants appeal the restitution order on a variety of grounds. In this opinion, we address only: (1) the government's contention that the appeal should be dismissed; (2) the defendants' contention that the restitution order violated their Sixth Amendment rights; and (3) David Bengis's contention that he should not be held liable for the entire restitution amount. We affirm the district court's judgment except as to the extent of David Bengis's liability and we remand the restitution order entered against David Bengis for further proceedings. Defendants' remaining arguments are resolved in a summary order filed simultaneously with this opinion.

**BACKGROUND**

From 1987 to 2001, the defendants engaged in an elaborate scheme to harvest large quantities of South Coast and West Coast rock lobsters from South African waters for export to the United States in violation of both South African and U.S. law. At all relevant times, the South African Department of Marine and Coastal Management maintained fishing season quotas and issued harvesting and exporting permits for rock lobsters. Defendants, through their company, Hout Bay Fishing Industries Ltd. ("Hout Bay"), harvested rock lobsters in amounts that exceeded the authorized quotas and exported those lobsters to the United States.

In May 2001, South Africa seized a container of unlawfully harvested lobsters. South Africa declined to prosecute the individual defendants because it determined they were beyond the reach of South African authorities, but it charged Hout Bay with overfishing of South and West Coast Rock Lobsters in violation of South Africa's Marine Living Resources Act 18 of 1998. Arnold Bengis returned to South Africa and pleaded guilty on behalf of Hout Bay.

South Africa cooperated with a parallel investigation conducted by the United States. The individual defendants were eventually indicted in the United States District Court for the Southern District of New York, and, on March 2, 2004, Arnold Bengis and Jeffrey Noll pleaded guilty to: (i) violations of the Lacey

Act, 16 U.S.C. § 3372(a)(2)(A), which makes it a crime to, inter alia, import fish taken in violation of foreign law; and (ii) conspiracy to violate the Lacey Act and to commit smuggling, 18 U.S.C. § 545, in violation of 18 U.S.C. § 371. On April 2, 2004, David Bengis pleaded guilty to a misdemeanor count of conspiracy to violate the Lacey Act. The defendants were sentenced principally to terms of imprisonment of 46 months (Arnold Bengis), 30 months (Jeffrey Noll), and 12 months (David Bengis) and to a forfeiture order of $13,300,000 to the United States. Although the plea agreements acknowledged that restitution was a further possibility, the district court deferred addressing restitution.

The United States thereafter sought restitution on behalf of South Africa. In support of its application for restitution, the United States submitted a report prepared by the Ocean and Land Resource Assessment Consultants ("OLRAC") that calculated restitution under two separate methods. The first method calculated the cost to South Africa of restoring the rock lobster fishery to the level that would have existed if the defendants had not engaged in overharvesting (the "catch forfeit" method); restitution under this method amounted to $46,775,150. The second method calculated the market value of the overharvested lobsters (the "market value" method); restitution under this method amounted to $61,932,630.

The district court denied the government's request for restitution under both the Mandatory Victims Restitution Act of 1996 ("MVRA") and the Victim and Witness Protection Act of 1982 ("VWPA") because it concluded that South Africa was not a "victim" of the defendants' offenses. We vacated these orders on the basis that South Africa had a property interest in the illegally harvested lobsters and was therefore a "victim" under both the MVRA and VWPA. Because of South Africa's property interest in the lobsters, we held that the MVRA governed the restitution award to South Africa and remanded for calculation of the appropriate restitution amount. *United States v. Bengis*, 631 F.3d 33, 42 (2d Cir. 2011), *cert. denied*, 131 S. Ct. 2911 (2011).

On remand, the district court referred the government's request for restitution to Magistrate Judge Andrew J. Peck. Using the market value method, the magistrate judge recommended a restitution award of $54,883,550, which represented the market value of the illegally harvested lobster offset by the $7,049,080 the defendants had already paid to South Africa.

On March 11, 2013, the government moved to restrain the defendants from transferring their assets held in three trusts at the SG Hambros Bank located in the Channel Islands in the United Kingdom and to direct the defendants to deposit $54,883,550 with the Registry of the Court. On March 22, 2013, the Bengises made

substantial changes to the three trusts. Specifically, David Bengis was removed as a beneficiary of two of the trusts, Arnold Bengis resigned as protector, and the Bengises appointed their family lawyer, Basil De Sousa, as the new protector.

On March 25, 2013, the district court entered an interim order restraining transfer or disposition of the assets held at SG Hambros except to the extent those assets exceeded $54,883,550. On June 14, 2013, the district court adopted the magistrate judge's recommended restitution order in part. The district court found that the government only had shown that the West Coast (and not the South Coast) rock lobsters were intended for the United States and that the restitution order should be limited to the market value of those lobsters. Therefore, the district court entered a restitution order of $22,446,720 and modified its restraining order to reflect the reduced amount of restitution.

Meanwhile, on June 10, 2013, before the restraining order was modified, the trustees of the SG Hambros trusts requested the bank to transfer the trusts' assets to a Swiss bank. Relying on the district court's restraining order, SG Hambros refused to comply with this request. The trustees then sued SG Hambros in the Channel Islands seeking to compel the transfer.

On October 17, 2013, the district court ordered the defendants and "all persons in active concert" with them to deposit funds up to

the restitution amount with the Clerk of Court (the "deposit order") and enjoined defendants and "all persons in active concert" with them from encumbering or transferring to any entity other than the Clerk of Court any property in which the defendants held an interest. Defendants' 2014 App'x 200. The defendants timely appealed both the underlying restitution award and the deposit order.

## DISCUSSION

We review a district court's order of restitution and deposit order for abuse of discretion. *See United States v. Ojeikere*, 545 F.3d 220, 222 (2d Cir. 2008). The district court's legal conclusions are reviewed *de novo*, and its factual findings for clear error. *United States v. Amato*, 540 F.3d 153, 158 (2d Cir. 2008).

## I.    Discretionary Dismissal of Appeal

Before turning to the merits of defendants' appeal, we address the government's contention that the appeal should be dismissed because the defendants tried to evade the court's power to execute its mandate. In support, the government points to the defendants' refusal to comply with the deposit order and the trustee's suit seeking to compel a transfer of the SG Hambros assets to a Swiss bank.

The government relies on *Stern v. United States*, 249 F.2d 720 (2d Cir. 1957). In *Stern*, we entered a provisional order dismissing an

appeal because the defendants showed "a determined effort to deprive the court of power to execute its mandate." *Id.* at 722. Specifically, the defendants had liquidated their assets, abandoned their U.S. citizenship, and fled to Czechoslovakia in a "successful attempt to render the court powerless to enforce its decree." *Id.*

In this case the actions of the defendants are more benign. The defendants, who have served their sentences, have continued to submit to the jurisdiction of the district court, have not renounced their U.S. citizenship, and are in no sense fugitives. As the government conceded at oral argument, the defendants have continued to appear at court proceedings when required. In addition, the defendants' efforts to transfer assets from SG Hambros to the Swiss bank were unsuccessful. Therefore, although we are troubled by the defendants' apparent efforts to place their assets beyond the court's reach rather than comply with the deposit order, the SG Hambros assets appear to remain available to satisfy the restitution award and the district court's contempt power reaches the defendants. Finally and significantly, the government has not sought to hold the defendants in contempt. In these circumstances, we decline to exercise our discretion to deny the defendants appellate review. *See In re Feit & Drexler, Inc.*, 760 F.2d 406, 414 (2d Cir. 1985) (declining to dismiss appeal where the defendant

remained subject to the court's jurisdiction and the contempt process was available).

**II.     Defendants' *Apprendi* Challenge to the Amount of Restitution**

Turning to the merits of the defendants' attack on the restitution order, we first address defendants' contention that the order violated their Sixth Amendment protections under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Under the sentencing scheme at issue in *Apprendi*, a defendant found guilty by a jury beyond a reasonable doubt for possession of a prohibited weapon was guilty of a second-degree offense. If in addition, however, a judge found by a preponderance of the evidence that the defendant's purpose for unlawfully possessing the weapon was to intimidate his victim on the basis of a particular characteristic the victim possessed, the judge could impose punishment identical to that which New Jersey provided for crimes of the first degree. *Id.* at 491. The effect of this enhancement was to increase the maximum penalty the defendant faced from 10 years to 20 years. *Id.* at 495. The Supreme Court held that this scheme violated the defendant's Sixth Amendment rights because "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

In this case, the restitution amount reflects South Africa's loss, which was calculated based on the market value of the illegally harvested lobsters. The defendants' plea agreements did not specify the value of the rock lobsters they illegally imported. Defendants therefore argue that, under *Apprendi*, the restitution amount cannot be based on the value of the lobsters because that fact was neither admitted by the defendants nor found by a jury beyond a reasonable doubt.

This argument is unavailing because, unlike the terms of imprisonment at issue in *Apprendi*, the MVRA and VWPA specify no maximum restitution amount. Therefore, a judge cannot find facts that would cause the amount to exceed a prescribed statutory maximum. *See United States v. Reifler*, 446 F.3d 65, 118 (2d Cir. 2006) (holding that restitution is an indeterminate system that "fixes no range of permissible restitutionary amounts and sets no maximum amount . . . that the court may order").

Defendants also argue that the district court's calculation of South Africa's loss required it to engage in the same type of factfinding as the district court that imposed the fine held to violate *Apprendi* in *Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012). In that case, the jury found that the defendant had violated an environmental statute, but it was not asked to determine the precise duration of the violation. The district court nevertheless determined

that the defendant had violated the statute for 762 days and assessed an $18 million fine based on a statutory maximum of $50,000 per day. *Id.* at 2349. The Court held that, under *Apprendi*, the district court's sentence could not exceed the $50,000 statutory maximum fine because it relied on facts that were not reflected in the jury verdict or admitted by the defendant. *Id.* at 2350.

*Southern Union* is inapposite. In *Southern Union*, but for the district court's finding that the defendant had violated the statute for 762 days, the maximum fine the defendant would have faced was $50,000. *Id.* at 2349. Thus, the district court imposed the fine above a statutory maximum. In this case there never was a determinate maximum restitution amount that defendants faced; under the MVRA, restitution is always determined with respect to the value of property that is lost. *See* 18 U.S.C. § 3663A(b). The district court could not, and did not, exceed a maximum that did not exist. *See Southern Union Co.*, 132 S. Ct. at 2353 ("Nor, *a fortiori*, could there be an *Apprendi* violation where no maximum is prescribed."). Therefore, any factfinding by the district court was not only permissible under *Apprendi* but was required to determine the appropriate amount of restitution under the MVRA.

Defendants' final argument is that restitution is similar to a fine whose maximum is determined with reference to the victim's loss. As defendants point out, the Court in *Southern Union*

referenced statutes in which the fine may be pegged to some factor of actual loss. 132 S. Ct. at 2351 n.4 (citing, inter alia, 18 U.S.C. § 3571(d), 18 U.S.C. § 645, and 18 U.S.C. § 201(b)). But each of those statutes posits two alternative fine amounts: a determinate statutory maximum and an amount based on the value of loss caused by the defendant. *See, e.g.*, 18 U.S.C. § 3571 (prescribing maximum fines based on the class of offense and "*alternative* fines" based on gain or loss) (emphasis added).

The Court determined that *Apprendi* was implicated when the district court chose to exercise its discretion to use an alternative valuation that exceeded the statutory maximum based on facts not found by the jury. *See Southern Union Co.*, 132 S. Ct. at 2351 ("[O]ur decisions broadly prohibit judicial factfinding that increases maximum criminal sentences, penalties, or punishments. . . ." (internal quotation marks and alterations omitted)). In contrast, restitution under the MVRA and VWPA has only one valuation— the amount of the victim's loss. There is no alternative maximum penalty. In sum, where, as here, there is no determinate statutory maximum that a district court can exceed, there is no range prescribed by statute and thus there can be no *Apprendi* violation.

For these reasons, we adhere to our decision in *United States v. Reifler* and join our sister circuits in concluding that judicial factfinding to determine the appropriate amount of restitution under

a statute that does not prescribe a maximum does not implicate a defendant's Sixth Amendment rights. *See United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 2038 (2013); *United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 658 (2013); *see also United States v. Wolfe*, 701 F.3d 1206, 1217 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 2797 (2013) (finding that restitution is not a criminal penalty). Therefore the district court did not abuse its discretion by fixing the restitution amount at $22,446,720.

### III.    David Bengis's Liability for Restitution

The district court ordered Arnold Bengis, Jeffrey Noll, and David Bengis to "pay restitution to the Republic of South Africa, jointly and severally, in the amount of $22,446,720." Defendants' 2013 App'x 325. Separately from the other defendants, David Bengis argues that, because he allocuted to misdemeanor involvement in a conspiracy only from 1999 through August 1, 2001, the restitution ordered against him must exclude losses caused by the acts of the other defendants prior to 1999. The government responds that, because the primary purpose of the MVRA is to make victims of crime whole, the district court acted within its discretion by holding David Bengis jointly and severally liable for the entire restitution amount.

In general, "one who joins an existing conspiracy takes it as it is, and is therefore held accountable for the prior conduct of co-

conspirators." *United States v. Sansone*, 231 F.2d 887, 893 (2d Cir. 1956). In the context of sentencing for drug conspiracies, however, we have held that "[t]he late-entering coconspirator should be sentenced on the basis of the full quantity of narcotics distributed by other members of the conspiracy only if, when he joined the conspiracy, he could reasonably foresee the distributions of future amounts, or *knew or reasonably should have known what the past quantities were*." *United States v. Miranda-Ortiz*, 926 F.2d 172, 178 (2d Cir. 1991) (emphasis added).

Restitution must be determined in a similar manner. *See United States v. Boyd*, 222 F.3d 47, 51 (2d Cir. 2000) (per curiam) (finding no plain error where the district court imposed a restitution order holding the defendant "liable for the reasonably foreseeable acts of all co-conspirators"). Thus, if David Bengis's understanding of the scope of the conspiracy he joined in 1999 was such that he knew or reasonably should have known about some or all of the conspiracy's past imports, his restitution order should encompass those amounts. However, if David Bengis joined the conspiracy without reasonable knowledge of his co-conspirators' past activities, then he should not be held liable for the loss caused by those activities. Of course, he would remain jointly and severally liable for the losses caused by the conspiracy after he joined it.

On the record before us, we cannot determine whether David Bengis, when he joined the conspiracy in 1999, understood the scope of the conspiracy, such that he knew or should have known the extent of its adverse economic impact. Accordingly, we remand this matter to the district court in accordance with the procedures we set forth in *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), to determine whether David Bengis knew or reasonably should have known the scope and impact of any or all of the past activities of the conspiracy he joined.

On remand, if the district court finds that a preponderance of the evidence shows that David Bengis knew or should have known of the scope and impact of the conspiracy prior to joining it, then the restitution order that has been entered against him may stand. *See United States v. Martinez*, 987 F.2d 920, 926 (2d Cir. 1993) (preponderance of the evidence standard applies to determination of whether defendant reasonably should have known the quantities of drugs sold by the conspiracy). If the district court determines, however, that the full scope and impact of the past activities of the conspiracy would not have been reasonably known to this defendant, then the district court should vacate the judgment and enter a new order reflecting the appropriate amount of restitution for which David Bengis is liable. This amount should include the amount of losses that occurred after David Bengis joined the

conspiracy and may include any amounts of prior losses of which he would have been reasonably aware. In the interest of judicial economy, this panel will retain jurisdiction over any subsequent appeal from the district court; either party may notify the Clerk of a renewed appeal within fourteen days of the district court's decision. *See Jacobson*, 15 F.3d at 22.

We have considered and find to be without merit the defendants' other arguments, including that (1) the district court abused its discretion by relying on the OLRAC Report and Ray Declaration in determining the appropriate amount of restitution; (2) South Africa was not a "victim" of David Bengis's offense; and (3) the district court abused its discretion by entering the deposit order against the defendants. The disposition of these arguments is set forth in a summary order filed simultaneously with this opinion.

## CONCLUSION

For the foregoing reasons, the judgment is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.