# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 15, 2015

Plaintiff-Appellee,

v

No. 321831
Midland Circuit Court
LC No. 13-005499-FC

DIANE MELODY DIETER,

Defendant-Appellant.

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right her conviction for bank robbery, MCL 750.531. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 7 to 15 years' imprisonment. Because the trial court did not abuse its discretion by admitting lay identification testimony, defendant was not denied the effective assistance of counsel, and defendant is not entitled to have a jury find facts related to the imposition of restitution, we affirm.

On the morning of May 1, 2014, defendant left her home in Rose City, Michigan driving a red Toyota Corolla. Cellular telephone records indicate that defendant made several calls while heading south, including most notably a telephone call in Midland, more than 60 miles from her home. This call in Midland began at 9:01 a.m. and lasted until 9:07 a.m. Shortly after 9:00 a.m., a witness, Gala Bank, saw a woman with a ponytail speaking on the telephone while parked in a red car near the Comerica Bank in Midland.[1] After the woman completed the telephone call, she put on a green T-shirt. A short time later, a woman with a ponytail walked into the Comerica Bank wearing a surgical mask, sunglasses, and a green T-shirt which read "Pizza Sam." The woman approached a teller and demanded that the teller give her all of her fifty and hundred dollar bills. The teller complied and the woman left the bank with $2,200. The teller then saw a red car leave the parking lot after the robbery.

---

[1] When shown a photo array containing a photograph of defendant, Banks vacillated between photographs 2 and 4 because "they looked very similar." Banks ultimately chose number 2, but she remained unsure of her selection. Defendant was number 4.

After viewing surveillance video from the bank and speaking with witnesses, police thought that defendant fit the description of the suspect and they spoke with defendant. Defendant lied to police, claiming that she had not been in Midland and that she had been at home all day. Further, defendant was in the midst of a divorce and she indicated that she was having financial difficulties. Yet, inconsistently, defendant also claimed to have more than $200,000 in trust at a credit union, a claim which proved to be entirely false. Moreover, despite apparent financial difficulties, on the day after the bank robbery, defendant gave her soon-to-be ex-husband, Raymond Dieter, a few hundred dollars in either $50 or $100 bills. Dieter testified that defendant had a "large amount" of cash with her at that time. In addition, at trial, defendant's daughter, Mary Voss, and Dieter identified defendant as the woman in the surveillance photographs of the bank robber.

As noted, a jury convicted defendant of bank robbery, and the trial court sentenced defendant to 7 to 15 years' imprisonment. The trial court also ordered defendant to pay restitution to Comerica Bank in the amount of $2,200. Defendant now appeals as of right.

On appeal, defendant first challenges the admission of lay opinion testimony regarding the identity of the woman in the surveillance photographs. In particular, defendant contends that the trial court abused its discretion by allowing Dieter and Voss to testify that the photographs depicted defendant. According to defendant, such testimony impermissibly invaded the province of the jury and any probative value was substantially outweighed by unfair prejudice.

We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *People v Murphy (On Remand),* 282 Mich App 571, 578; 766 NW2d 303 (2009). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *Id.* A preliminary question of law, including the admissibility of evidence based on construction of a court rule or rule of evidence, is reviewed de novo. *People v Jambor,* 273 Mich App 477, 481; 729 NW2d 569 (2007).

As a general rule, all relevant evidence is admissible, except as otherwise provided by the court rules or either the state or federal constitution. *People v Yost,* 278 Mich App 341, 355; 749 NW2d 753 (2008); MRE 402. Under MRE 701, lay opinion testimony in particular is admissible as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Although lay opinion testimony is generally admissible if these criteria are met, it is also true that "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense." *People v Fomby,* 300 Mich App 46, 53; 831 NW2d 887 (2013) (citation omitted). Moreover, "where a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Drossart,* 99 Mich App 66, 80; 297 NW2d 863 (1980). For this reason, if, for example, a jury is equally capable of identifying an individual in a photograph or video, typically a lay witness who has viewed a video or photograph may not

-2-

identify a defendant as the individual depicted because such testimony would invade the province of the jury. See *Fomby*, 300 Mich App at 52-53.

Conversely, however, if a witness is better situated than the jury to correctly identify the individual shown in the video or photograph, such testimony is not considered an invasion of the province of the jury. See *id.*, citing *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9 1993). See also 3 Wharton's Criminal Evidence § 12:9 (15th ed.); 74 A.L.R.5th 643 (1999). For example, while not an exhaustive list, a witness might be better situated than the jury to identify an individual in a photograph (1) if the witness is substantially familiar with the defendant, (2) if the depiction of the individual is obscured or not of the best quality, or (3) if the defendant wore a disguise or otherwise altered his or her appearance in the photograph. See *Young v United States*, 111 A3d 13, 15 (DC 2015); *United States v White*, 639 F3d 331, 336 (CA 7 2011); *United States v Dixon*, 413 F3d 540, 545 (CA 6 2005); *LaPierre*, 998 F2d at 1465. The "common thread" binding these types of cases is that "there is reason to believe that the witness is more likely to identify correctly the person than is the jury." *LaPierre*, 998 F2d at 1465.

Turning to the present facts, we conclude that the trial court did not abuse its discretion by concluding that Voss and Dieter could testify to their identification of defendant in the bank surveillance photographs. First, their testimony was admissible under MRE 701 because it was (1) rationally based on their own perceptions and (2) helpful to the jury's determination of a fact at issue in the case. That is, both Dieter and Voss saw the photographs and they were personally familiar with defendant's appearance, meaning that their opinions regarding defendant's identity as the robber depicted in the photographs was rationally based on their own perceptions.[2] Cf. *Fomby*, 300 Mich App at 51. Further, the opinion testimony offered by Dieter and Voss was helpful to the jury's determination of a fact in issue, namely defendant's identity as the bank robber. The photographs in question were of a "grainy" quality and the robber wore a mask, hat, and sunglasses. Given these circumstances, Dieter's and Voss's substantial familiarity with defendant enabled them to provide the jury with helpful insight into the question of whether it was defendant depicted in the photographs. Cf. *White*, 639 F3d at 336. In these circumstances, their testimony was admissible under MRE 701.

---

[2] Defendant suggests on appeal that there was no "rational" basis for the opinions offered by Voss and Dieter because they could not point to distinguishing features, such as scars or tattoos, as the basis for their identification of defendant as the woman in the photograph. The absence of distinguishing features, while perhaps relevant to the weight to be afforded their testimony, did not render their testimony irrational or inadmissible. Specifically, although a witness must have substantial familiarity with a defendant, we know of no requirement that the witness be able to point to any distinctive feature as a basis for identification. Voss for instance testified that she recognized the woman in the photographs as defendant based on her hair, her face, her arms, and her hands. Dieter, who had been married to defendant for three years, likewise testified that he "could tell right away that it was" defendant. To establish that their opinion was rationally based on their own perception, it is enough that Voss and Dieter had a demonstrated familiarity with defendant and that, based on their personal review of the photographs, they were able to identify defendant as the woman depicted.

Contrary to defendant's argument, we also conclude that this testimony did not invade the province of the jury. Given the witnesses' substantial familiarity with defendant, the grainy quality of the photographs, and the concealing items worn by defendant in those photographs, it is clear that both Voss and Dieter were in a better position than the jury to identify defendant as the individual depicted in the photographs. See *Fomby*, 300 Mich App at 53. Because this lay opinion testimony was admissible under MRE 701 and did not invade the province of the jury, the trial court did not abuse its discretion by admitting identification testimony from Voss and Dieter.

In contrast to this conclusion, defendant argues on appeal that, even if the lay opinion testimony was generally admissible under MRE 701, it should have been excluded as more prejudicial than probative under MRE 403. Defendant failed to raise this specific objection in the trial court, meaning that defendant's argument implicating MRE 403 is unpreserved and reviewed for plain error affecting defendant's substantial rights. See *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). Under MRE 403, it is within a trial court's discretion to exclude otherwise admissible evidence, "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403; *People v Blackston*, 481 Mich 451, 461; 751 NW2d 408 (2008). "The mere fact that evidence is damaging to a defendant does not make the evidence *unfairly* prejudicial." *People v Eliason*, 300 Mich App 293, 302; 833 NW2d 357 (2013). Rather, "[u]nfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Blackston*, 481 Mich at 462. Unfair prejudice "adversely affect[s] the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995) (internal quotation marks and citation omitted).

In this case, given the quality of the photograph and the witnesses' substantial familiarity with defendant, their testimony was highly probative to the question of defendant's identity as the bank robber in the photograph. Although certainly damaging to defendant's case, we see nothing unfairly prejudicial in the admission of this lay opinion testimony. It did not interject considerations extraneous to the lawsuit and, given that the jurors remained free to examine the photographs for themselves and to reject the witnesses' testimony, cf. *White*, 639 F3d 335-336, we see no indication that the testimony would be given undue weight by the jury. Consequently, the trial court did not plainly err by failing to exclude this testimony under MRE 403.

Next, defendant contends on appeal that her trial counsel provided ineffective assistance by failing to investigate and call three additional lay witnesses to refute the claim that the photographs depicted defendant. In particular, defendant argues that, to counter testimony from Voss and Deiter, counsel should have investigated the potential testimony of Shirley Grobson (defendant's foster mother), Lonnie Grobson (defendant's foster brother), and Mary Preston (defendant's long-time friend and recent romantic partner). Based on her claim of ineffective assistance of counsel, defendant seeks a new trial or a remand for an evidentiary hearing. In

support of her claim, defendant attaches three affidavits from proposed witnesses and an "offer of proof" signed by her appellate attorney.[3]

First, Shirley Grobson averred that she was defendant's foster mother when she was a teenager and that she had "continuously maintained a close relationship with" defendant. She stated that she saw the photographs from the robbery and that she "certainly could not say from looking at those photos who the masked robber was," and she thought it "absurd" that anyone could claim to recognize defendant in the photos. Second, Nadine Grobson averred that she had been married to Lonnie Grobson, who is now deceased. Nadine averred that Lonnie had seen the photographs from the robbery and believed that the robber was not defendant. Third, Mary Preston averred that she had been friends with defendant for more than 30 years and that for the past year they had been engaged in a romantic relationship. She stated that she did not believe that the person in the surveillance photographs was defendant. Further, she claimed that she had "tried to speak with" trial counsel before trial, but "he did not want to speak to" her. Finally, appellate counsel attached what he labeled an "offer or proof," stating that, at an evidentiary hearing, he would present the testimony of the three affiants and that he also intended to call trial counsel. Considering defendant's proofs and the trial court record, we conclude that defendant cannot show the ineffective assistance of counsel and we decline defendant's request to remand for a *Ginther* hearing.

To establish her claim of ineffective assistance of counsel, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). It is defendant's burden to establish the factual predicate of her claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (internal quotation marks and citation omitted).

Under the first prong, "[t]he inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (citation omitted). "This standard requires a reviewing court 'to affirmatively entertain the range of possible 'reasons . . . counsel may have had for proceeding as they did.' " *Id.* (citation omitted). "Defense counsel should be 'strongly presumed to have rendered adequate assistance and made

---

[3] Defendant moved the trial court for a new trial and/or an evidentiary hearing. Attached to defendant's motion in the trial court were her attorney's offer of proof and the three affidavits in question. After the trial court denied defendant's motion, defendant moved this Court to remand for an evidentiary hearing. We denied defendant's motion "without prejudice to defendant's ability to argue to the case call panel that the trial court erred in denying her an evidentiary hearing with regard to her motion for a new trial." *People v Dieter*, unpublished order of the Court of Appeals, entered May 19, 2015 (Docket No. 321831).

all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (citation omitted). Decisions regarding what witnesses to call and arguments to present are among the strategic decisions that will not be second-guessed on appeal. *People v Dunigan*, 299 Mich App 579, 590; 831 NW2d 243 (2013); *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). Moreover, defense counsel does not have an "unconditional obligation to call or interview every possible witness suggested by a defendant," and "strategic decisions made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *People v Beard*, 459 Mich 918; 589 NW2d 774 (1998) (quotation and citation omitted). Ultimately, the failure to call a particular witness only constitutes ineffective assistance when it deprives a defendant of a "substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

In this case, defendant has not shown that counsel's failure to investigate or call the witnesses in question fell below an objective standard of reasonableness under governing professional norms. Regarding the potential testimony of Shirley Grobson and Lonnie Grobson, there is no indication that defense counsel was aware of these witnesses. That is, in the affidavits relating to their potential testimony, neither Shirley Grobson nor Lonnie's wife indicated that the witnesses contacted defendant's attorney, and defendant has not provided an affidavit attesting to the assertion that she told her trial counsel about these witnesses. Without any indication that defense counsel knew of these potential witnesses, counsel cannot be considered objectively unreasonable for failing to investigate their potential testimony.[4] Cf. *People v Herron*, 303 Mich App 392, 397; 845 NW2d 533 (2013), overruled on other grounds by *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015). See also *People v Carbin*, 463 Mich 590, 601; 623 NW2d 884 (2001).

With respect to Preston, who claims in her affidavit that she did approach trial counsel, it is clear to us from the record that trial counsel adopted a strategy with respect to Voss and Dieter's identification that made investigation into Preston's testimony, or that of other similar witnesses, unnecessary. See *Beard*, 459 Mich at 918. That is, rather than offering testimony from people who knew defendant to testify that the photograph did not depict defendant, defense counsel chose to argue that the jury should disregard outside opinions from non-eyewitnesses regarding "some grainy surveillance photograph" and focus on the "objective" evidence presented at trial, including, for example, the undisputed fact that the cellular telephone records demonstrated that defendant was moving during her 9:01 phone call and yet Bank, an actual eyewitness to events, did not state that the woman she observed on the phone was moving. In other words, rather than emphasize the importance of the photographs by presenting conflicting opinions regarding the woman's identity, trial counsel reasonably downplayed the photographs by urging the jury to focus on other evidence. To further discount the significance of the photographs, as well as to undermine Voss and Dieter's testimony, counsel argued that the jury could look at the photographs "all [they] want," but that counsel did not see how anyone could

---

[4] Additionally, given that Lonnie Grobson is deceased, any testimony from his wife on what her deceased husband said regarding the photographs is clearly hearsay and thus inadmissible. See MRE 801; MRE 802.

identify the woman shown given her disguise. Consistent with this strategy, counsel also attacked the relevance and reliability of Voss and Dieter's identification testimony during cross-examination and in closing arguments, emphasizing that neither were eyewitnesses to the robbery, that Dieter initially failed to identify defendant in the photographs, and that Voss could point to no distinguishing features to support her identification of defendant. While discounting testimony from Voss and Dieter, counsel also repeatedly redirected the jury's attention to Bank's testimony, emphasizing that Bank, the only eyewitness to see the robber's face, failed to identify defendant in the photo array.

Counsel's strategy regarding the photographs strikes us an eminently reasonable (even without investigation into possible testimony from Preston and other similar potential witnesses) given the grainy quality of the photographs and the items worn in the pictures to conceal the robber's face, particularly when one considers that testimony favoring defendant from those close to her would have been open to claims of bias. By adopting this strategy, counsel avoided the creation of a credibility contest between defendant's daughter and husband on one side and other individuals close to defendant on the other, by essentially arguing that no one could identify the woman in the photographs and that opinions from individuals who were not witnesses to the bank robbery were irrelevant. In short, given the sound strategy adopted by trial counsel, counsel was not objectively unreasonable for failing to investigate, or to call as witnesses, defendant's friends and family who might claim that defendant was not shown in the surveillance photographs. See *Beard*, 459 Mich at 918; *Dixon*, 263 Mich App at 398.

Moreover, even assuming that counsel should have investigated the potential witnesses or called them at trial, defendant has not shown that any error by counsel was outcome determinative. While testimony from Preston and others would have conflicted with the identification testimony offered by Voss and Dieter, the fact remains that there was substantial additional evidence supporting the jury's verdict. For instance, defendant and the robber both had small red cars. Cell phone records placed defendant in Midland, 60 miles from her home, at the time of the robbery, and yet she lied to police about her whereabouts, claiming to have been at home all day. Bank saw a woman matching defendant's description speaking on the telephone in a red car near the bank shortly before the robbery and she saw the woman put on a green T-shirt similar to that worn by the robber. Defendant also lied to police about her finances and, despite financial difficulties, she had a large sum of cash the day following the robbery and she gave Dieter cash in the same denominations taken from the bank—50 or 100 dollar bills. Given the evidence presented, even assuming some error by counsel, defendant has not shown that, but for counsel's error, there was a reasonable probability of a different outcome. See *Trakhtenberg*, 493 Mich at 51. Consequently, defendant has not established the ineffective assistance of counsel. Given the evidence presented at trial and defendant's offers of proof, we also see no need for a remand for an evidentiary hearing. Thus, defendant's request for a *Ginther* hearing is denied.

Next, on appeal, defendant argues that the trial court abused its discretion by denying defendant's request for substitute counsel because, according to defendant, there was a complete breakdown in the attorney-client relationship. Specifically, when defendant requested new counsel, she told the trial court that counsel was not "properly defending" her, that she did not "trust" counsel, and that there was "no communication" as evinced by the fact that counsel had only spoken with defendant only three times in six months and counsel had not mentioned that

Voss would be a witness. Defendant maintains that the trial court abused its discretion by denying her motion because these claims constituted good cause for the appointment of substitute counsel and appointment of new counsel would not have unduly disrupted the judicial proceedings.

This Court reviews a trial court's decision regarding a request for substitute counsel for an abuse of discretion. *Strickland*, 293 Mich App at 397. "Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "Good cause may exist where a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, where there is a destruction of communication and a breakdown in the attorney-client relationship, or where counsel shows a lack of diligence or interest." *People v McFall*, ___ Mich App ___, ___; ___ NW2d ___ (2015), slip op at 3 (internal quotation marks and citations omitted). In contrast, a "mere allegation" that defendant "lacked confidence in his trial counsel is not good cause to substitute counsel." *Traylor*, 245 Mich App at 463. "Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Strickland*, 293 Mich App at 398. When a defendant alleges a breakdown in the attorney-client relationship, the trial court should inquire into the allegations, but "a defendant's conviction will not be set aside, even in the absence of judicial consideration of the defendant's allegation, if 'the record does not show that the lawyer assigned to represent [the defendant] was in fact inattentive to his [or her] responsibilities.'" *People v Buie*, 298 Mich App 50, 67; 825 NW2d 361 (2012) (citation omitted).

In this case, none of defendant's complaints about her counsel's performance constituted good cause for the substitution of counsel and the trial court did not abuse its discretion by denying defendant's motion. In particular, many of defendant's general complaints—including her assertions that counsel was not "properly defending" her, that she did not "trust" counsel, and that there was "no communication"—amount to mere allegations that defendant lacked confidence in her attorney or that she was generally unhappy with counsel. These types of complaints do not constitute good cause for the substitution of counsel. See *Strickland*, 293 Mich App at 398; *Traylor*, 245 Mich App at 463. Additionally, the trial court provided defendant with ample opportunity to explain her concerns on the record and defendant offered only two more specific allegations: (1) counsel had only spoken with defendant three times in six months, and (2) counsel had not told defendant that Voss would be a witness. However, rather than substantiate defendant's claims of a breakdown in the attorney-client relationship, defendant's specific complaints make clear that she had in fact communicated with her counsel on at least three occasions, belying any claim that there was "no communication." Cf. *Strickland*, 293 Mich App at 398. Further, while defendant claimed not to know that Voss would be a witness, from the trial court's remarks and exchange with defendant, it is clear that defendant learned of Voss's proposed testimony at the preliminary examination and that defense counsel was in fact actively pursuing a motion to prevent Voss from testifying at trial. The record contains no indication that counsel was inattentive to his responsibilities. See *Buie*, 298 Mich App at 67. In sum, given the substance of defendant's concerns, defendant has not established good cause for the appointment of new counsel, and the trial court did not abuse its discretion by denying defendant's motion. Defendant is not entitled to relief on this basis.

Finally, defendant contends that the trial court impermissibly ordered defendant to pay restitution based on findings of fact that were not submitted to the jury. Specifically, defendant argues that the trial court could not increase the penalty for bank robbery by imposing $2,200 in restitution because the jury did not specifically determine that defendant stole $2,200 from Comerica Bank.[5] More broadly, relying on *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000) and its progeny, including *S Union Co v United States*, 132 S Ct 2344; 183 L Ed 2d 318 (2012), defendant argues that Michigan's restitution scheme is unconstitutional insofar as it authorizes a trial court to make findings of fact necessary for the determination of the amount of restitution. We need not consider this argument in any detail because this precise argument was recently rejected by this Court in *People v Corbin*, __ Mich App __, __; __ NW2d __ (2015), slip op at 10-11. In *Corbin*, this Court joined the plethora of courts that have uniformly rejected the contention that a jury must determine the amount of loss a victim suffered for restitution purposes.[6] See *id.* Given this Court's holding in *Corbin*, it is clear that defendant is not entitled to relief from the restitution ordered by the trial court.

Affirmed.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra

---

[5] Defendant failed to object to the amount of restitution imposed at sentencing. Indeed, far from objecting, defendant arguably waived any claim of error relating to the restitution amount when her counsel expressly responded "no, your honor" when asked by the trial court if he had "any disagreement with the restitution amount of $2,200?" See *People v Harper*, 479 Mich 599, 642 n 72; 739 NW2d 523 (2007); *People v Grant*, 455 Mich 221, 235; 565 NW2d 389 (1997); MCL 780.767.

[6] See, e.g., *United States v Bengis*, 783 F3d 407, 413 (CA 2 2015); *United States v Roemmele*, 589 Fed App'x 470, 471 (CA 11 2014); *United States v Day*, 700 F3d 713, 732 (CA 4 2012); *United States v Wolfe*, 701 F3d 1206, 1217 (CA 7 2012); *United States v Leahy*, 438 F3d 328, 337-338 (CA 3 2006); *United States v Milkiewicz*, 470 F3d 390, 404 (CA 1 2006); *United States v Garza*, 429 F3d 165, 170 (CA 5 2005) (per curiam); *United States v Sosebee*, 419 F3d 451, 461 (CA 6 2005); *United States v May*, 413 F3d 841, 849 (CA 8 2005); *United States v Bussell*, 414 F3d 1048, 1061 (CA 9 2005); *United States v Wooten*, 377 F3d 1134, 1144 (CA 10 2004); *United States v Shmuckler*, 911 F Supp 2d 362, 370 (ED Va 2012). See also LaFave et al, Criminal Procedure (3d ed), § 26.6(c), n 42 (collecting cases).