16-3250-cr
United States v. Fiumano

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of January, two thousand eighteen.

PRESENT: REENA RAGGI,
           GERARD E. LYNCH,
           RAYMOND J. LOHIER, JR.,
              *Circuit Judges*.

-------------------------------------------------------------------------

UNITED STATES OF AMERICA,

                             *Appellee*,

          v.                              No. 16-3250-cr

DIONYSIUS FIUMANO,

                    *Defendant-Appellant*,

PED ABGHARI, AKA TED ALLEN, JUSTIN ROMANO,

                    *Defendants*.

-------------------------------------------------------------------------

APPEARING FOR APPELLANT:    DONNA NEWMAN, Law Offices of Donna R. Newman, PA, New York, New York.

APPEARING FOR APPELLEE:    EDWARD IMPERATORE, Assistant United States Attorney (Patrick Egan, Diane Gujarati, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, New York.

1

Appeal from final judgment of the United States District Court for the Southern District of New York (John F. Keenan, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on September 16, 2016, is VACATED and REMANDED IN PART as to forfeiture, and AFFIRMED in all other respects.

Defendant Dionysius Fiumano was convicted after a jury trial of substantive and conspiratorial wire fraud, *see* 18 U.S.C. §§ 1343, 1349, and 2, in connection with an advance-fee mortgage modification scheme involving thousands of victims, many of whom lost their homes as a result of the fraud. On appeal, Fiumano challenges only his sentence, which ordered concurrent 16-year prison terms as well as forfeiture and restitution, each in the amount of $11,975,404.13. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm in part and vacate in part.

1.    The Prison Terms

Fiumano argues that his total 16-year prison sentence is procedurally and substantively unreasonable. We first address his procedural challenge, which asserts Guidelines calculation error. *See United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (*en banc*).

a. Procedural Error

(1) Sophisticated Means Enhancement

Because Fiumano first challenges the application of a sophisticated means enhancement on appeal, *see* U.S.S.G. § 2B1.1(b)(10)(C), we review only for plain error,

2

*see United States v. Hertular*, 562 F.3d 433, 449 (2d Cir. 2009), which is not evident here. The district court's purported failure to explain its application of this enhancement, *see* 18 U.S.C. § 3553(c), warrants no remand because the court expressly adopted the findings in Fiumano's Pre-Sentence Report ("PSR"), which provided satisfactory factual support, *see United States v. Espinoza*, 514 F.3d 209, 212 (2d Cir. 2008). Indeed, the Guidelines' own example of sophisticated means—a telemarketing scheme in which the main office and soliciting operations are in separate jurisdictions, *see* U.S.S.G. § 2B1.1 cmt. n.9(B)—precisely mirrors the conduct here.

Fiumano cannot urge otherwise by arguing that he was a mere "salesman." Appellant Br. at 28. Although this court has held that sophisticated means is an offense characteristic, not a characteristic of an individual defendant, *see United States v. Lewis*, 93 F.3d 1075, 1084 (2d Cir. 1996), for purposes of this decision we assume *arguendo* that the Sentencing Commission's 2015 amendment of the sophisticated means enhancement requires us to look to Fiumano's own conduct in assessing the appropriateness of this enhancement, *see* U.S.S.G. § 2B1.1(b)(10)(C) (requiring defendant himself to have "intentionally engaged in or caused conduct constituting sophisticated means"). When we do so, we have no difficulty concluding that there was sufficient evidence of Fiumano's intentional conduct that the district court's application of the enhancement was not plain error. Specifically, Fiumano's orchestration of, and participation in, the "company flips," used by the schemers to evade victims and law enforcement, demonstrates his personal engagement in conduct constituting sophisticated means.

3

(2) Abuse-of-Private-Trust Enhancement

As for Fiumano's challenge to the application of an abuse-of-private-trust enhancement, *see* U.S.S.G. § 3B1.3, we need not resolve the parties' dispute as to whether our review is also limited to plain error because Fiumano fails to show any error at all. The district court's adoption of the PSR obviates the need to remand for an explanation of reasons for this enhancement, and Fiumano's substantive challenge to the enhancement is meritless. He argues that because he did not deal directly with victims, they did not view him as personally holding a position of trust. But Fiumano does not—and cannot—dispute trial evidence showing that telemarketers, acting at his direction and using scripts he prepared, induced victims by falsely telling them that they would be represented by a lawyer. *See* U.S.S.G. § 3B1.3 cmt. n.3 (applying enhancement to false representations of trust); *United States v. Walker*, 191 F.3d 326, 338 (2d Cir. 1999) (recognizing attorney to hold position of trust with regard to clients). Indeed, several victims testified that they understood from these representations that they had retained an attorney. Fiumano is responsible for confederate actions in a jointly undertaken scheme, *see* U.S.S.G. § 1B1.3(a)(1)(B) (stating that in case of "jointly undertaken criminal activity," defendant is responsible for all acts and omissions of others "reasonably foreseeable" to have been within scope and in furtherance of that jointly undertaken activity), most particularly when taken at his direction, *see generally* 18 U.S.C. § 2. Accordingly, we identify no error in application of the § 3B1.3 enhancement.

(3) <u>Role Enhancement</u>

Fiumano challenges application of the four-level enhancement for organizers and leaders of criminal activities involving five or more participants, *see* U.S.S.G. § 3B1.1(a), arguing that only a two-level role enhancement was warranted, *see id.* § 3B1.1(c), particularly given the purported greater roles of other co-conspirators. The argument merits little discussion. Fiumano does not dispute that the scheme involved five or more participants, and the Guidelines themselves make clear that more than one person can qualify as a leader or organizer of a criminal scheme. *See id.* § 3B1.1 cmt. n.4; *United States v. Wisniewski*, 121 F.3d 54, 58 (2d Cir. 1997). The record easily admits a preponderance finding that Fiumano was an organizer or leader of the scheme. *See United States v. Salazar*, 489 F.3d 555, 557–58 (2d Cir. 2007). Evidence showed that Fiumano did more than manage or supervise the telemarketers and sales managers essential to the scheme. He recruited a significant number of such participants and exercised considerable discretion in instructing them on the misrepresentations they were to make to victims, conduct indicative of a leader or organizer. *See* U.S.S.G. § 3B1.1 cmt. n.4; *United States v. Chavez*, 549 F.3d 119, 136 (2d Cir. 2008) (holding four-level enhancement appropriate where defendant instructed lower level co-conspirator on dilution of narcotics); *United States v. Parker*, 903 F.2d 91, 104 (2d Cir. 1990) (holding four-level enhancement appropriate where defendant recruited accomplices). Further, he earned more than a half-million dollars from the scheme, which, even if not the highest amount earned by any participant—a point disputed by the parties—was "a larger

share of the fruits of the crime" than that of most other participants.   U.S.S.G. § 3B1.1

cmt. n.4.   Accordingly, a four-level role enhancement was warranted.

(4) Loss Amount

Fiumano argues that the district court committed procedural error in applying a

20-level enhancement to his Guidelines calculation based on the PSR's loss report of

$11,975,404.13.   *See* U.S.S.G. § 2B1.1(b)(1)(K) (pertaining to losses exceeding $9.5

million up to $25 million).   He contends that only an 18-level enhancement was

warranted.   *See id.* § 2B1.1(b)(1)(J) (pertaining to losses exceeding $3.5 million up to

$9.5 million).[1]   The point merits little discussion because this loss argument was made

to the district court, which plainly chose not to resolve it because the precise loss figure

was "immaterial" to its decision to vary substantially below either Guidelines range to

impose a total 16-year prison term.   JA 316, 324.   Where the district court makes such

an explicit and unambiguous declaration that a particular enhancement did not affect its

ultimate sentence, we need not decide a procedural challenge to the enhancement's

application.   *See United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) ("Where we

identify procedural error in a sentence, but the record indicates clearly that the district

court would have imposed the same sentence in any event, the error may be deemed

harmless, avoiding the need to vacate the sentence and to remand the case for

resentencing." (internal quotation marks omitted)); *accord United States v. Feldman*, 647

---

[1]  The higher enhancement, considered together with all other Guidelines factors, resulted in a recommended term of life imprisonment, which was capped by the statutory maximum prison sentence of 40 years.   The lower enhancement would yield a Guidelines sentencing range of 324–405 months' imprisonment.   *See* U.S.S.G. ch. 5, pt. A.

F.3d 450, 459 (2d Cir. 2011). Fiumano's arguments urging us not to take the district court at its word are unconvincing. The record amply manifests the district court's careful consideration of all relevant factors—mitigating as well as aggravating—in exercising its ultimate discretion to sentence Fiumano not within any Guidelines range, but to the 16-year term of incarceration that it thought best served the sentencing goals of 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 50 (2007) (stating that sentencing court "may not presume that the Guidelines range is reasonable" but must itself determine sentence that serves interests stated in 18 U.S.C. § 3553(a)); *United States v. Jones*, 531 F.3d 163, 182 (2d Cir. 2008).

  b.  Substantive Unreasonableness

Fiumano argues that his 16-year prison sentence is substantively unreasonable. We will identify substantive unreasonableness only in those "exceptional cases," *United States v. Cavera*, 550 F.3d at 189, where the sentence is "so 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law' that allowing [it] to stand would 'damage the administration of justice,'" *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)). A Guidelines sentence will rarely raise such concerns; a below-Guidelines sentence even less so. *See United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011).[2] This is not an exceptional case warranting a different conclusion.

---

[2] Fiumano's 16-year (192-month) sentence is significantly below both the capped 40-year Guidelines range derived from the application of a 20-level loss enhancement and the 324- to 405-month range derived from the application of an 18-level enhancement.

As the district court reasonably observed, Fiumano played a leadership role over a number of years in "a callous and heartless mortgage modification scheme" in which thousands of victims were defrauded by misrepresentations crafted by Fiumano and conveyed by scores of people whom he supervised. JA 314–15. Many of the victims lost their homes as a result of the fraud, suffering "enormous" emotional as well as financial harm. *Id.* at 318. Meanwhile, Fiumano earned more than a half-million dollars from his crime. On this record, and mindful of the "due deference" owed to the sentencing judge's exercise of discretion, *United States v. Cavera*, 550 F.3d at 190, we cannot conclude that a total prison sentence of 16 years is so shocking as to be substantively unreasonable.

No different conclusion is compelled by lesser sentences imposed in other fraud cases or on certain of Fiumano's co-defendants. While a district court is statutorily required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), the weight to give this, or any other § 3553(a) factor, is a matter committed to the district court's discretion and generally unreviewable on appeal. *See Gall v. United States*, 552 U.S. at 56; *United States v. Cavera*, 550 F.3d at 191 (stating that appellate courts "do not consider what weight we would ourselves have given a particular factor," but decide only whether factor "can bear the weight assigned" by district court). Such deference is particularly warranted here, where Fiumano has failed to show that his crime is clearly analogous to those involved in the comparator cases he cites, whether in terms of his particular leadership role, the scope of the fraud, and the

8

particularly serious harm—emotional as well as financial—inflicted on thousands of victims. *See United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012) (rejecting disparity challenge where there was no showing that defendants were "similarly situated"). Much less can Fiumano complain of disparity with his co-defendants, *see United States v. Johnson*, 567 F.3d 40, 54 (2d Cir. 2009) (stating that district court "may—but is not required to—consider sentencing disparity among co-defendants under 18 U.S.C. § 3553(a)(6)"), whose guilty pleas and cooperation with the government make them not similarly situated to Fiumano, *see United States v. Fernandez*, 443 F.3d 19, 30–33 (2d Cir. 2006) (holding that disparity among non-similarly situated co-defendants manifests no § 3553(a)(6) error).

Accordingly, because Fiumano's prison sentence is neither procedurally nor substantively unreasonable, his argument for vacatur and remand fails.

## 2. Forfeiture

The parties agree that the forfeiture order imposing joint and several liability on Fiumano in the amount of $11,975,404.13, representing the entire amount of the scheme's proceeds, must be vacated in light of *Honeycutt v. United States*, 137 S. Ct. 1626, 1630 (2017) (holding that defendant cannot be held "jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire").[3] But while the government asks us to direct the district court, on remand,

---

[3] In light of the government's concession, we need not here decide whether *Honeycutt*'s ruling, made with respect to a forfeiture order under 21 U.S.C. § 853(a)(1), applies equally in all respects to forfeiture orders under other statutes, including 18 U.S.C. § 981(a)(1)(C), applicable here.

to order forfeiture in the reduced amount of $593,605.88, constituting the amount Fiumano was paid during his employment with PMG, Fiumano contends that the district court should be ordered to conduct a new hearing as to the proper forfeiture amount, but with a cap of $593,605.88. He does not dispute that he was paid this amount, or that all PMG revenues came from victims of the fraud scheme. Rather, he argues that a hearing is necessary because certain victims received legitimate document preparation services, such that Fiumano's forfeiture should be reduced by the amount these victims paid to PMG.[4]

Fiumano's argument is defeated by trial testimony showing that document-preparation victims were falsely told that an "underwriter" had reviewed the victims' loan files and that they would likely qualify for loan modifications, when Fiumano and his co-conspirators knew that no such review had occurred and that these victims were poor candidates for loan modification. Because document-preparation victims thus parted with their $595 based on lies concocted by Fiumano and his confederates, these victims most assuredly did not receive the services for which they bargained. *See United States v. Binday*, 804 F.3d 558, 579 (2d Cir. 2015) (holding that victim sustains loss from fraud if defendant intends his misrepresentation to induce victim to enter transaction without relevant facts necessary to make informed economic

---

[4] PMG purported to offer its victims two types of services: full modification service for a fee of $3,000, and document preparation service for a fee of $595. As to the former, victims were told that an attorney would submit loan modification documents to and negotiate with the bank on the victim's behalf. As to the latter, victims were told PMG would prepare an application that the victim would submit.

10

decision).    Accordingly, because the only conclusion admitted by the evidence is that *all* of Fiumano's compensation "constituted or derived from proceeds traceable to [the fraud]," it is subject to forfeiture.    18 U.S.C. § 981(a)(1)(C).

3.    Restitution

The Mandatory Victims Restitution Act ("MVRA") requires a district court to order a defendant to make restitution to identifiable victims of the crime of conviction who have suffered a pecuniary loss.    18 U.S.C. § 3663A(a)(1), (c)(1)(B).    Such restitution can be ordered jointly and severally.    *See United States v. Zangari*, 677 F.3d 86, 96–97 (2d Cir. 2012).    Fiumano nevertheless urges us to vacate the $11,975,404.13 restitution order in his case, arguing that it (1) holds him responsible for losses occurring before he joined the charged conspiracy, (2) includes payments made by document-preparation victims who sustained no loss, and (3) fails to identify victims and their losses individually.    Because Fiumano did not object to the restitution order before the district court, we review only for plain error, which is not evident here.    *See United States v. Boyd*, 222 F.3d 47, 49 (2d Cir. 2000).

Fiumano's first argument is defeated by the very case on which he relies: *United States v. Bengis*, 783 F.3d 407 (2d Cir. 2015).    *Bengis* reaffirmed the principle that if a defendant who joins a conspiracy "knew or reasonably should have known about some or all of the conspiracy's past [criminal conduct], his restitution order should encompass" past loss amounts.    *Id.* at 413.    The trial record here shows that, prior to joining PMG, Fiumano worked for co-conspirator Pedram Abghari at Clear Blue, where they and others ran a nearly identical fraud scheme to the one they would conduct at PMG.    Indeed, it

11

was when Abghari left Clear Blue to open his new fraudulent enterprise, PMG, that he selected Fiumano to run Clear Blue's sales staff. Thus, when Abghari recruited Fiumano to join the PMG fraud scheme, Fiumano knew or reasonably should have known that fraudulent activity had transpired there prior to his arrival. On these facts, we identify no plain error in the district court's decision to order Fiumano to make restitution for the entire length of the charged conspiracy.

Fiumano's second challenge warrants no different conclusion because, as we have already held, trial evidence compels the conclusion that fraudulent representations induced document-preparation victims to part with their money, and thus they are entitled to restitution. We need not address Fiumano's arguments as to the availability of data about such victims in PMG's file storage system, because nothing in his arguments suggests that the data would alter the fact of misrepresentation.[5]

Fiumano argues that the $11,975,404.13 restitution order represents losses suffered by all fraud victims, who number in the thousands. He submits that, at sentencing, the government identified only 100 victims of the fraud, thereby violating precedent prohibiting lump-sum restitution orders. *See United States v. Zakhary*, 357 F.3d 186, 190 (2d Cir. 2004) ("A lump sum restitution order entered without any identification of victims and their actual losses is not permissible."); *United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003) (holding "that restitution can only be imposed to the extent that the victims of a crime are actually identified"). At

---

[5] For this reason, Fiumano's motion to expand the record on appeal to include an affidavit concerning the availability of this data, *see* Dkt. No. 40, is hereby DENIED.

sentencing, the district court stated that it had "received victim impact statements from over 100 victims." JA 314. But the restitution order itself states that "the names, addresses, and specific amounts owed to the victims are set forth in the Schedule of Victims and Restitution attached hereto." SPA 8. Thus, while the 100 victims who submitted victim impact statements may be among those included on the Schedule of Victims and Restitution, this does not mean that only 100 victims are there identified.[6] Having failed to produce the Schedule of Victims and Restitution as part of the appellate record, Fiumano can hardly show clear, much less plain, error in the district court's restitution order.

We have considered Fiumano's remaining arguments and conclude that they are without merit. Accordingly, we VACATE only so much of the judgment of conviction as orders forfeiture, and we REMAND to the district court for the limited purpose of ordering forfeiture in the amount of $593,605.88. In all other respects, the judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

[6] Indeed, at oral argument, the government produced the Schedule of Victims and Restitution, which in fact listed, by name and address, thousands of victims of the scheme and the amount of their losses, which more than justified the restitution amount determined by the district court, and counsel for Fiumano acknowledged the accuracy of the document presented by the government. Fiumano's argument thus appears to be entirely inaccurate.